STATE of Iowa, Appellee,

v.

**Thomas Stanley EAMES, Appellant.**

No. 96–546.

Supreme Court of Iowa.

June 18, 1997.

Linda Del Gallo, State Appellate Defender, and Annette L. Hitchcock and Christopher Cooklin, Assistant State Appellate Defenders, for appellant.

Thomas J. Miller, Attorney General, Susan M. Crawford, Assistant Attorney General, James DeTaeye, County Attorney, and James Scheetz, Assistant County Attorney, for appellee.

TERNUS, Justice.

Defendant, Thomas Stanley Eames, appeals from his convictions for dominion and control of a firearm by a convicted felon, *see* Iowa Code § 724.26 (1993), and possession of a controlled substance, *see id.* § 124.401(3). He contests the trial court's admission of evidence seized by law enforcement authorities following execution of an administrative search warrant. Finding no error, we affirm.

### I. *Background Facts and Proceedings.*

In 1993, Eames made three controlled sales of marijuana to Marshalltown police. He was charged with three counts of possession, one based on possession of one ounce of marijuana and two based on possession of a quarter pound of marijuana. Eames eventually pled guilty to possession of forty grams of marijuana and was placed on probation.

In November 1994, Tracy Anderson, a drug enforcement officer in Marshall County, contacted John Wetlaufer of the Iowa Department of Revenue and Finance ("Department"). Wetlaufer's duties included the collection of delinquent taxes through distress warrants, levies, garnishments, and search warrants. Anderson informed Wetlaufer of the drug purchases made from Eames in 1993, and Wetlaufer calculated a drug tax due from Eames in the amount of $2,307.96. *See* Iowa Code ch. 453B (drug tax statute).

Wetlaufer prepared an application and necessary documents for the issuance of an administrative search warrant. He then made arrangements to meet four deputies at Eames' residence to execute the warrant. On his way to the magistrate's office to ob-

tain the warrant, Wetlaufer placed a notice of the drug tax assessment in the mail to Eames.

Approximately ten to fifteen minutes later, Wetlaufer obtained a magistrate's approval for the warrant. His affidavit in support of the application states the notice of the tax assessment, a distress warrant, and a lien notice had been mailed to Eames. The magistrate was not advised, however, these documents had been mailed only a few minutes earlier and Eames could not possibly have received them by the time the search warrant was issued and executed.

After obtaining the warrant, local authorities conducted a search of Eames' residence. Eames was not present. During this search, officers saw marijuana. The search was stopped and a search warrant for drugs was obtained. During execution of the second search warrant, the authorities confiscated contraband, resulting in the present firearm and possession charges.

Eames filed a motion to suppress the evidence obtained in the execution of the second search warrant, claiming it was based on information discovered during an illegal search under the administrative search warrant. *See* Iowa R.Crim. P. 11. The district court overruled the motion and the evidence was considered at Eames' trial. The case was tried to the court on the minutes of testimony and Eames was found guilty of dominion and control of a firearm by a convicted felon, *see* Iowa Code § 724.26, and possession of a controlled substance, *see id.* § 124.401(3).

Eames filed this appeal, alleging error in the district court's ruling on his motion to suppress. Because Eames' appeal is based on challenges to the issuance of the administrative search warrant, it is helpful to begin our analysis with a review of the statutes governing the procedures for such a warrant.

II. *Procedure For Issuance Of An Administrative Search Warrant.*

The stated purpose of the warrant obtained by Wetlaufer was to allow the Department to collect the drug tax assessed against Eames.[1] Therefore, we start our review of the applicable statutes with the law imposing this tax.

A. *Assessment of the tax.* Iowa Code chapter 453B imposes an excise tax on "dealers." *See* Iowa Code § 453B.7. A "dealer" is defined in part as any person possessing 42½ grams or more of marijuana in this state. *Id.* § 453B.1(3)(b). The excise tax may be assessed by the director of the Department "based on knowledge or information available to the director." Iowa Code Ann. § 453B.9 (West Supp.1997).[2]

The director is required to serve the taxpayer by regular mail at the taxpayer's last known address or in person with "a written notice of the amount of tax, interest, and penalty due, which notice may include a demand for immediate payment." *Id.* "Service of the notice by regular mail is complete upon mailing." *Id.* Upon service of the notice, the director may "*immediately* proceed to collect the tax, interest, and penalty by any method prescribed in section 422.30." *Id.* (emphasis added). All assessments of taxes made pursuant to chapter 453B are considered jeopardy assessments as provided in section 422.30. *Id.*

B. *Collection of the tax.* The method of collection is affected by chapter 453B's characterization of the drug tax assessment as a "jeopardy assessment." Jeopardy assessments are governed by Iowa Code section 422.30:

If the director believes that the assessment or collection of taxes will be jeopardized by delay, the director may immediately make an assessment of the estimated amount of tax due, together with all interest, additional amounts, or penalties, as provided by law. The director shall serve the taxpayer by regular mail at the taxpay-

1. Although Eames claims the authorities actually obtained the administrative search warrant to look for illegal drugs, we do not consider this claim because the trial court did not address this issue in its ruling.

2. Section 453B.9 and section 422.30 were amended in 1994. *See* 1994 Iowa Acts ch. 1165, §§ 17, 40. The amended statutes apply to this case.

er's last known address or in person, with a written notice of the amount of tax, interest, and penalty due, which notice may include a demand for immediate payment. Service of the notice by regular mail is complete upon mailing. *A distress warrant may be issued or a lien filed against the taxpayer immediately.* *Id.* § 422.30 (emphasis added). A distress warrant "is directed to the sheriff of the appropriate county and [identifies] the taxpayer, the tax type, and the delinquent amount." Iowa Code § 422.26. It directs the sheriff to seize, levy upon, or sell any real or personal property belonging to the taxpayer to satisfy the delinquency. *Id.*

Iowa Code section 453B.11 empowers the director to obtain an administrative search warrant "as authorized by section 808.14" to execute a distress warrant. Section 808.14 merely authorizes the court to issue an administrative search warrant "in accordance with the statutory and common law requirements for the issuance of such warrants."[3]

### III. *Issues on Appeal.*

Eames supported his motion to suppress with several arguments. The district court, however, considered and ruled upon only three: (1) the State failed to show section 453B.7 applies to Eames because he was convicted of possessing only forty grams of marijuana; consequently, Eames was not a "dealer" within the meaning of section 453B.1(3)(b); (2) the State cannot rely on the procedures for a jeopardy assessment because collection of the tax was not really in jeopardy; the State could have filed a lien against Eames' house to satisfy the delinquency; and (3) section 453B.9 violates procedural due process because it does not provide for predeprivation notice and hearing, *see* U.S. Const. amends. V, XIV. The court ruled against Eames on these issues and did not discuss the other arguments made in Eames' motion to suppress.

■ Our error preservation rule "requires that issues must be presented to and passed

upon by the district court before they can be raised and decided on appeal." *State v. Manna,* 534 N.W.2d 642, 644 (Iowa 1995). In *Manna,* the defendant rested his motion to suppress on two grounds. *Id.* The trial court denied his motion, addressing only one ground. *Id.* We held error was not preserved on the issue not considered by the trial court. *Id.* Applying this same principle of law here, we conclude the only issues preserved for our review are the three questions passed upon by the district court.

### IV. *Scope of Review.*

■ We review the court's interpretation of chapter 453B for correction of errors of law. *State v. Kidd,* 562 N.W.2d 764, 765 (Iowa 1997). Our review of the constitutional issue is de novo based on the totality of the circumstances. *Manna,* 534 N.W.2d at 643.

### V. *Applicability of Chapter 453B.*

A. *Eames' status as a dealer.* As noted earlier, chapter 453B imposes an excise tax on "dealers." Iowa Code § 453B.7. A "dealer" is defined in part as any person possessing 42½ grams or more of marijuana. *Id.* § 453B.1(3)(b).

■ Eames claims he was not a "dealer" because he pled guilty to possession of forty grams of marijuana, an amount less than that required by the statutory definition of "dealer." Consequently, he argues, the tax was incorrectly assessed against him. The district court concluded the State was not bound by the defendant's plea bargain in the prior possession case. We agree with the court's conclusion but also believe Eames' challenge fails for a more fundamental reason.

Section 453B.9 expressly provides the tax "is presumed valid and correctly determined and assessed." Iowa Code Ann. § 453B.9. If a taxpayer disputes his "dealer" status, he may appeal the assessment. *Id.* The burden is upon the taxpayer to prove he was not a "dealer." *Id.* Eames has not shown he successfully appealed the tax assessment; he

---

**3.** Eames claims the Department's ability to obtain an administrative search warrant is limited by Iowa Code section 421.9, which empowers the director to apply for an administrative search warrant if certain conditions are met. This issue was not preserved for appellate review so we do not consider the applicability of section 421.9 under the facts of this case.

may not contest the correctness of the assessment here.

■ Even considering Eames' argument on its merits, we find the tax was properly assessed. Section 453B.9 allows the director to assess the tax "based on knowledge or information available to the director." Here, the tax assessment rested on information provided by local law enforcement authorities that Eames possessed two quarter pounds of marijuana. (A quarter of a pound is considered in excess of 42½ grams.) Basing the assessment on this information was entirely proper under chapter 453B, notwithstanding Eames' guilty plea to possession of a lesser amount.

■ B. *Jeopardy assessment.* Eames argues the assessment made against him was never really in jeopardy because he owned real estate and the State could have placed a lien on that property to secure payment of the tax. Therefore, he concludes, it was improper for the State to proceed to collect the tax under the summary procedures available for jeopardy assessments.

Section 453B.9 states: "All assessments of taxes made pursuant to this chapter shall be considered jeopardy assessments...." The statute clearly encompasses *all* assessments with no qualification or limitation. Therefore, we will not read into section 453B.9 an additional requirement that, in order to qualify as a jeopardy assessment, the assessment not be collectible using other measures. *See Schultze v. Landmark Hotel Corp.,* 463 N.W.2d 47, 49 (Iowa 1990) ("Ordinarily, we may not, under the guise of judicial construction, add modifying words to the statute or change its terms."); *State v. Hesford,* 242 N.W.2d 256, 258 (Iowa 1976) (holding same).

VI. *Due Process.*

■ Legislative enactments, particularly taxing statutes, have a strong presumption of constitutionality. *Schroeder Oil Co. v. Iowa State Dep't of Revenue & Fin.,* 458 N.W.2d 602, 603 (Iowa 1990). The person challenging the statute bears the burden to show it is unconstitutional. *State v. Osmundson,* 546 N.W.2d 907, 909 (Iowa 1996).

■ Although not entirely clear, it appears the taxpayer's complaint here is the statute's failure to require notice and an opportunity for hearing prior to seizure of the taxpayer's property. We conclude, because a drug tax assessment is a jeopardy assessment, preseizure notice and hearing are not required.[4]

The United States Supreme Court has articulated the general rule that procedural due process mandates *predeprivation* notice and hearing. *United States v. James Daniel Good Real Property,* 510 U.S. 43, 53, 114 S.Ct. 492, 500, 126 L.Ed.2d 490, 503 (1993); *Fuentes v. Shevin,* 407 U.S. 67, 82, 92 S.Ct. 1983, 1995, 32 L.Ed.2d 556, 571 (1972). Nevertheless, the Court has recognized exceptions to this rule in "extraordinary situations." *Fuentes,* 407 U.S. at 90, 92 S.Ct. at 1999, 32 L.Ed.2d at 575. Three factors are invariably present when the Court has allowed "outright seizure without opportunity for a prior hearing":

> First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.

*Id.* at 91, 92 S.Ct. at 2000, 32 L.Ed.2d at 576.

If the government shows a special need for very prompt action, a predeprivation hearing is not required before seizure of property to satisfy a tax liability so long as a post-seizure hearing is promptly afforded.[5] *Phillips v.*

---

4. We note Eames claims section 453B.9 unconstitutionally classifies all drug tax assessments as jeopardy assessments in violation of the Fourth Amendment. This issue was not preserved for appellate review and therefore, we consider the assessment at issue here a bona fide jeopardy assessment.

5. Eames has not argued the postdeprivation proceedings available to him are inadequate other than the fact they are not available prior to the seizure of his property. *See, e.g., Schroeder Oil,* 458 N.W.2d at 604 (finding due process did not require predeprivation hearing, but, nevertheless, due process was violated by failure to allow

*Commissioner,* 283 U.S. 589, 597, 51 S.Ct. 608, 611, 75 L.Ed. 1289, 1297 (1931); *accord Schroeder Oil,* 458 N.W.2d at 604; *cf. Commissioner v. Shapiro,* 424 U.S. 614, 631–32, 96 S.Ct. 1062, 1072–73, 47 L.Ed.2d 278, 292 (1976) (considering whether the federal government's act of seizing a taxpayer's assets under the summary procedures applicable to jeopardy assessments could be enjoined despite the federal Anti–Injunction Act). On the other hand, where, as in the case of real estate, the property to be seized will not disappear pending notice and hearing, the United States Supreme Court has held the government must provide the taxpayer with predeprivation notice and the opportunity for a hearing. *Good Real Property,* 510 U.S. at 62, 114 S.Ct. at 505, 126 L.Ed.2d at 508.

We conclude the procedure provided by chapter 453B is constitutional. We find support for this conclusion in *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). There, the United States Supreme Court upheld the Puerto Rican government's seizure of a yacht subject to civil forfeiture without affording prior notice or hearing. *Calero–Toledo,* 416 U.S. at 679–80, 94 S.Ct. at 2090, 40 L.Ed.2d at 466. The Court examined whether the three factors identified in *Fuentes* were present. *Id.* at 679, 94 S.Ct. at 2090, 40 L.Ed.2d at 466. First, the Court stated the seizure served an important governmental purpose, permitting the government to assert in rem jurisdiction over property in order to conduct forfeiture proceedings. *Id.* Second, the Court observed preseizure notice and hearing would frustrate the statute's purpose because a yacht is the "sort [of property] that could be removed to another jurisdiction, destroyed, or concealed, if advance warning of confiscation were given." *Id.* Finally, the Court noted the seizure was initiated by government officials who determined the seizure was appropriate under Puerto Rican statutes. *Id.*

The same reasoning applies here. Collection of tax revenues is an important governmental interest. *Clifft v. Indiana Dep't of State Revenue & Fin.,* 660 N.E.2d 310, 318 (Ind.1995) (agreeing with legislature's classification of drug tax collection as area "in which the magnitude of the government's need to take action without administrative delay justifies the temporary deprivation of property which may occur"); *see Fuentes,* 407 U.S. at 91–92, 92 S.Ct. at 2000, 32 L.Ed.2d at 575 (giving as an example of situations where summary seizure has been allowed the "collect[ion of] the internal revenue of the United States"). Second, preseizure notice and hearing to the drug dealer/taxpayer would undermine the State's objective because the personal property seized in this case could easily be secreted. *Cf. Fuentes,* 407 U.S. at 93–94 n. 30, 92 S.Ct. at 2001 n. 30, 32 L.Ed.2d at 577–78 n. 30 ("The danger is all too obvious that a criminal will destroy or hide evidence or fruits of his crime if given any prior notice."). Finally, the person initiating the seizure is a government official responsible for determining the applicability of the statute. *See Calero–Toledo,* 416 U.S. at 679, 94 S.Ct. at 2090, 40 L.Ed.2d at 466.

Other courts considering very similar drug tax statutes have also concluded the summary procedures for collection of the tax pass constitutional scrutiny. *E.g., Briney v. State Dep't of Revenue,* 594 So.2d 120, 123 (Ala.Civ.App.1991); *Clifft,* 660 N.E.2d at 318; *Sisson v. Triplett,* 428 N.W.2d 565, 571 (Minn.1988); *cf. In re Tax Indebtness of Stoltz,* 745 F.Supp. 643, 646 (D.Colo.1990) (holding taxpayers not entitled to prior notice and opportunity to be heard before issuance of search warrant to search for and seize property to satisfy their tax indebtedness).

Finding no violation of Eames' right to procedural due process, we affirm.

**AFFIRMED.**

All justices concur except CARTER, NEUMAN, and SNELL, JJ., who dissent.

CARTER, Justice (dissenting).

I dissent.

I believe it is clear from the district court's ruling on defendant's motion to suppress that the court was aware that defendant was lodg-

---

a postdeprivation hearing). Consequently, our focus is only on *when* notice and hearing must be provided, not on the *form* of the postseizure notice and hearing.

ing a Fourth Amendment challenge to the entry of his residence via an administrative search warrant as well as a due process challenge to the procedure under which that warrant was issued. This awareness is evidenced by the court's statement that:

> The Defendant contends that this [the request for a jeopardy assessment and a distress warrant] was a subterfuge and the officers used this as a means of obtaining what amounted to a warrantless search of the premises of a former drug user in the hope that they can find incriminating evidence.

The issue that is described by this language is clearly a Fourth Amendment issue and not a due process issue. This conclusion is inescapable because the court's remark was in response to a motion that specifically raised Fourth Amendment challenges to the procedure under which his home was entered and cited Fourth Amendment authority in support of those challenges.

It may not be fairly contended that the court did not consider the Fourth Amendment claim so as to defeat error preservation under the standard of *State v. Manna*, 534 N.W.2d 642, 644 (Iowa 1995). It considered the Fourth Amendment claim but found that the Fourth Amendment issue must necessarily fail if there was no due process violation in the administrative search warrant procedure. I submit that this conclusion was simply incorrect.

Even if defendant's due process challenge may fail on the issue of the State's right to a jeopardy assessment and a seizure of assets to satisfy defendant's tax liabilities, this does not provide a constitutional basis for the entry of defendant's residence under circumstances that offend against basic Fourth Amendment protections. In making this point to the district court, the defendant cited the case of *People v. Gastelo*, 67 Cal.2d 586, 63 Cal.Rptr. 10, 432 P.2d 706 (1967). In that case, the California court recognized that

> under the 4th Amendment a specific showing must always be made to justify any kind of police action tending to disturb the security of the people in their homes. Unannounced, forcible entry is in itself a seri-

ous disturbance of that security and cannot be justified on a blanket basis. Otherwise the constitutional test of reasonableness would turn only on practical expediency, and the amendment's primary safeguard, the requirement of particularity, would be lost.

*Id.* 63 Cal.Rptr. at 12, 432 P.2d at 708. I submit that in the present case the blanket issuance of an administrative search warrant authorizing entry of a personal residence without any articulation of facts rendering the entry reasonable for Fourth Amendment purposes cannot be sustained. All evidence recovered as the fruits of that improper entry should have been suppressed. The defendant's conviction should be reversed.

NEUMAN and SNELL, JJ., join this dissent.