**STATE of Iowa, Appellee,**

v.

**Kelvin ROBINSON, Appellant.**

No. 98–1040.

Supreme Court of Iowa.

Oct. 11, 2000.

Linda Del Gallo, State Appellate Defender, and John P. Messina, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Sheryl A. Soich, Assistant Attorney General, and Stephen Holmes, County Attorney, for appellee.

TERNUS, Justice.

The defendant, Kelvin Robinson, challenges his conviction for sexual exploitation of a minor under Iowa Code section 728.12(3) (1997), which prohibits the possession of child pornography. He claims that an exemption to this statute for educational institutions is unconstitutionally vague as applied to him. *See* Iowa Code § 728.7. We hold that the exemption clearly does *not* encompass the defendant's conduct because the exemption does not, under any circumstances, authorize the possession of child pornography. Therefore, section 728.7 is not vague as applied to the defendant. Accordingly, we affirm.

I. *Background Facts and Proceedings.*

This case began with the execution of a search warrant for the defendant's dormitory room. The authorities seized computer hardware and software belonging to the defendant that contained numerous images of minors engaged in prohibited sex acts with other minors and adults. The defendant admitted that he had transferred these images from the Internet, but asserted that he had done so in connection with the preparation of a paper for a class he was taking at Iowa State University. The police also discovered on his computer and in hard copy form a report on child prostitution.

The State charged the defendant with sexual exploitation of a minor, a serious misdemeanor. *See id.* § 728.12(3). This charge was based on the allegation that the defendant "did knowingly possess visual depictions of minors engaged in the live performance of prohibited sexual acts," i.e., what is commonly known as child pornography. *See id.* The defendant entered a plea of not guilty.

Subsequently, the defendant filed a motion to dismiss, contending (1) that the statutory exemption for the use of materials for educational purposes applied, *see id.* § 728.7, and (2) that, alternatively, the statutory exemption was vague and overbroad as applied. The district court overruled the defendant's motion, holding that the exemption did not apply to the possession of child pornography.

On the morning the trial was scheduled to start, the defendant entered an *Alford* plea to the charge of sexual exploitation of a minor. This plea was made pursuant to an agreement with the State whereby the State recommended a suspended sentence, the mandatory minimum fine, a two-year maximum probationary period, and a psychological and sexual evaluation. The court accepted the defendant's plea and he was subsequently sentenced to jail for one year, and ordered to pay the minimum statutory fine, plus costs and attorney fees. The court suspended the defendant's jail term and placed him on probation for eighteen months. The defendant was ordered to undergo any psychological or psychiatric tests recommended by his probationary supervisor, and to complete any treatment or counseling recommended as a result of such tests.

The defendant did not file a motion in arrest of judgment to challenge the adequacy of his guilty plea. *See* Iowa R.Crim. P. 23(3). Instead, he filed this

appeal. On appeal, the defendant claims that his conviction should be reversed because the statutory exemption, section 728.7, is unconstitutionally vague. He also makes a claim of ineffective assistance of trial counsel based on counsel's failure to argue in the district court that the defendant's possession of the materials in question was protected under the First Amendment to the United States Constitution. We review these claims de novo. *See State v. Horness*, 600 N.W.2d 294, 297 (Iowa 1999) (ineffective-assistance-of-counsel claim); *State v. Hunter*, 550 N.W.2d 460, 462 (Iowa 1996) (vagueness claim).

## II. *Vagueness Claim.*

■■■ A. *Nature of the defendant's vagueness claim—facial or as applied.* The defendant does not make clear in his brief the precise nature of his vagueness challenge, i.e., whether he claims the statutory exemption is vague as applied or is facially vague. We note that he made no facial vagueness claim in the trial court. Therefore, he has not preserved any error with respect to whether the statutory exemption is vague on its face. *See State v. McCright*, 569 N.W.2d 605, 607 (Iowa 1997) ("Issues not raised before the district court, including constitutional issues, cannot be raised for the first time on appeal."); *State v. Eames*, 565 N.W.2d 323, 326 (Iowa 1997) (holding that an issue must be presented to and ruled upon by the district court before it can be asserted

on appeal). Consequently, we proceed to consider his vague-as-applied claim.[1]

■■■ B. *Waiver of claim by pleading guilty.* In our *Hunter* case, this court held that a guilty plea did not waive the defendant's right to claim on appeal that the statute under which he was charged was unconstitutionally vague. 550 N.W.2d at 462 n. 1. Accordingly, we proceeded in *Hunter* to consider on its merits a vague-as-applied challenge. *Id.* at 465–66.

■■■ In concluding that the alleged constitutional error had not been waived in *Hunter*, this court relied on two cases applying the rule that a guilty plea does not waive a defense that the indictment or information charges no offense. *Id.* at 462 n. 1 (citing *State v. White*, 545 N.W.2d 552, 554 (Iowa 1996); *State v. Jaeger*, 249 N.W.2d 688, 690 (Iowa 1977)). We first adopted this exception to the general rule that a guilty plea waives all defenses in *Jaeger.* 249 N.W.2d at 690 (noting that "this court is faced with an issue of first impression"). Our formulation of the exception took the following form:

> We hold that if an indictment or county attorney's information *facially* shows a charge on which the State may not constitutionally prosecute, then a plea of guilty subsequent to an adverse ruling on a demurrer does not waive the claimed unconstitutionality as "no offense is stated."

---

1. Even if error had been preserved on a facial vagueness claim, the defendant's standing to assert such a claim is highly questionable. If a statute is constitutional as applied to a defendant, the defendant cannot make a facial challenge unless a recognized exception to the standing requirement applies. *See Hunter*, 550 N.W.2d at 463. One such exception is a situation in which First Amendment rights are implicated because the statute reaches a substantial amount of *protected* speech. *See id.* ·The expression at issue here, however—obscenity and child pornography—does not implicate First Amendment rights. *See New York v. Ferber*, 458 U.S. 747, 764, 102 S.Ct. 3348, 3358, 73 L.Ed.2d 1113, 1127 (1982) ("When a definable class of material ... bears

so heavily and pervasively on the welfare of children engaged in its production, we think the balance of competing interests is clearly struck and that it is permissible to consider these materials [child pornography] as without the protection of the First Amendment."); *Roth v. United States*, 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498, 1507 (1957) (holding that "obscenity is not within the area of constitutionally protected speech or press"); *see also Hunter*, 550 N.W.2d at 466–67 (holding that regulation of child pornography does not reach a substantial amount of protected expression so as to confer standing on a defendant to challenge section 728.1(6)(g) as unconstitutionally vague on its face).

*Id.* (emphasis added). Thus, in *Jaeger*, we considered a claim that the statute under which the defendant was convicted was "unconstitutionally vague and overbroad *on its face* so as to charge no offense" despite the fact that the defendant had pleaded guilty to the charge. *Id.* at 689–90 (emphasis added).

In *Hunter*, however, this court extended the exception, without discussion or analysis, to encompass a claim that the statute was vague *as applied.* 550 N.W.2d at 465. In retrospect, we think we went too far. To employ the exception when the challenge to the conviction is based on an *as applied* vagueness claim would ignore the underlying rationale of the exception. That rationale is that the court will not uphold a conviction when the charge—judged on its face—is one that the state may not constitutionally prosecute. *Jaeger*, 249 N.W.2d at 690 (citing *Menna v. New York*, 423 U.S. 61, 63, 96 S.Ct. 241, 242, 46 L.Ed.2d 195, 198 (1975); *Blackledge v. Perry*, 417 U.S. 21, 30–31, 94 S.Ct. 2098, 2103–04, 40 L.Ed.2d 628, 636 (1974)). To allow a challenge that does not rest on the premise that the indictment or information charges no offense would result in an exception that swallows the rule. In other words, if an as applied vagueness challenge is *not* waived by a guilty plea, what would be the rationale for holding that an equal protection challenge *is* waived? There would be no logical basis to distinguish a vague-as-applied claim from any other constitutional challenge to the statute. We think it ill-advised to adopt a rule that would create such inroads on our general rule that a guilty plea waives all defenses.

■ Therefore, we disavow *Hunter* to the extent that it stands for the proposition that a guilty plea does not waive an as applied vagueness challenge. We reaffirm our holding in *Jaeger* that the only defenses that are not waived by a guilty plea are those based on the ground that the indictment or information shows on its face that the charge is one that the State may not constitutionally prosecute.

■ We now consider the effect of our overruling of *Hunter* on the case before us. This court has the power in overruling a prior decision to give the new rule only prospective application. *See Beeck v. S.R. Smith Co.*, 359 N.W.2d 482, 484 (Iowa 1984) ("Courts may hold, however, that a particular overruling decision should in fairness have only prospective application."). This power should be exercised here. The defendant and his counsel understandably could have relied upon our decision in *Hunter* in deciding to enter a guilty plea, assuming that such a plea would not waive a claim that the statutes defining the defendant's crime were unconstitutionally vague as applied. It would be unfair in the face of such reliance to announce a new rule and apply it to this case and pending cases involving the same chronology of events. If we were to apply the new rule retroactively, a defendant such as Robinson would be left between the proverbial rock and a hard place. On one hand, he would be unable to assert his constitutional vagueness challenge on appeal because his guilty plea would have waived it. On the other hand, the defendant would probably not have a viable ineffective-assistance-of-counsel claim because his attorney's reasonable reliance on *Hunter* would preclude a finding that "counsel's performance fell below the normal range of competency." *Horness*, 600 N.W.2d at 298 (requiring proof that defense counsel breached an essential duty by performing below the normal range of competency in order to establish an ineffective-assistance-of-counsel claim). This court should avoid such an inequitable result when possible. *See Beeck*, 359 N.W.2d at 484 (noting that one factor to consider in giving a decision prospective application only is "the inequity imposed by retroactive application").

We hold, therefore, that our decision today with respect to the effect of a guilty plea on a vague-as-applied challenge ap-

plies only to those cases in which the guilty plea was accepted *after* the date of this opinion. Accordingly, the defendant in the case before us did not waive his vagueness challenge by pleading guilty.

C. *Defendant's vague-as-applied claim.* Our discussion begins with a review of the statutes under which the defendant was convicted, and an identification of the particular language that the defendant contends is unconstitutionally vague. As noted earlier, the defendant pled guilty to violating Iowa Code section 728.12(3). This statute provides:

A person who knowingly purchases or possesses a negative, slide, book, magazine, or other print or visual medium depicting a minor engaging in a prohibited sexual act or the simulation of a prohibited sexual act commits a serious misdemeanor.

Iowa Code § 728.12(3). In essence, this statute prohibits the purchase and possession of child pornography. The defendant makes no claim on appeal that this charging statute is unconstitutionally vague.

Of particular relevance to the present case is a statutory exemption for public libraries and educational institutions contained in chapter 728. This exemption states:

Nothing in this chapter prohibits the use of appropriate material for educational purposes in any accredited school, or any public library, or in any

educational program in which the minor is participating. Nothing in this chapter prohibits the attendance of minors at an exhibition or display of art works or the use of any materials in any public library.

*Id.* § 728.7. The defendant claimed in the district court that his conduct fell within the exemption for "use of appropriate material for educational purposes in any accredited school" because he downloaded the material onto his computer to use as a resource for a school report on child prostitution and child slavery.

The defendant also asserted in a pretrial motion that the exemption was vague as applied to him. His vagueness argument focused on the language "appropriate material," and the inability of an ordinary person to understand what that language meant. The State's response was that section 728.12(3) prohibited the possession of images of children engaged in sex acts, and this prohibition was not affected by section 728.7. The district court ruled that "appropriate material" did not include material that was otherwise defined as illegal to possess under section 728.12(3).

■ On appeal, the defendant argues that "[i]f 'appropriate material' . . . means only non-obscene material, there is no need for the section to exist."[2] The State, in response, claims that the exemption does not protect the possession of child

---

**2.** On appeal, the defendant has expanded his vagueness challenge to include an argument that the exemption is vague with respect "to the scope of the permitted use." He argues:

As relevant here, the statute permits the material to be used for "educational purposes in any accredited school." The dispositive question here is whether a reasonable person could read this language to mean that the material could be personally possessed *outside* school for purposes of a paper or project to be used *in* school.

In response, the State asserts that the exemption applies only to educators. Having reviewed the defendant's pre-trial motion, wherein he alleges a vague-as-applied challenge, and the transcript of the hearing on his motion, we are unable to find any record of

the defendant alerting the district court to the claim now being made on appeal. Indeed, the only argument addressed by the district court in its ruling on the defendant's vagueness claim was the defendant's assertion that the phrase "appropriate material" was unconstitutionally vague. Under these circumstances, the defendant has waived any argument that the language "educational purposes in any accredited school" is vague as applied to him. *See McCright,* 569 N.W.2d at 607; *Eames,* 565 N.W.2d at 326. Even if this issue had been preserved, it would not alter the outcome here, because we hold that under no reasonable construction of the statute would a person of ordinary intelligence conclude that the legislature intended to permit the use of child pornography, inside or outside school.

pornography. We turn now to the legal principles guiding our analysis.

D. *Applicable legal principles governing constitutional vague-as-applied claims.* We presume a statute is constitutional. *See Jim O. Inc. v. City of Cedar Rapids*, 587 N.W.2d 476, 478 (Iowa 1998). Thus, "[t]he unconstitutional vagueness of a criminal statute must be demonstrated beyond a reasonable doubt." *State v. Duncan*, 414 N.W.2d 91, 95 (Iowa 1987). The party challenging a statute on vagueness grounds must "negate every reasonable basis upon which the statute might be sustained." *Jim O. Inc.*, 587 N.W.2d at 478. Only where the statute "clearly, palpably and without doubt infringes the constitution" will this court declare it to be unconstitutionally vague. *American Dog Owners Ass'n v. City of Des Moines*, 469 N.W.2d 416, 417 (Iowa 1991).

A penal statute must " 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.' " *Hunter*, 550 N.W.2d at 463 (quoting *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983)); *accord American Dog Owners Ass'n*, 469 N.W.2d at 417 (holding that penal statute must give "a person of ordinary intelligence" notice of what is prohibited). In considering a vague-as-applied challenge, we examine the statute on its face to determine whether the defendant's conduct clearly falls outside the exemption "under any construction." *Hunter*, 550 N.W.2d at 465. "The fact that the statute may be vague as applied to other factual scenarios is irrelevant to this analysis." *Id.; accord State v. Price*, 237 N.W.2d 813, 817 (Iowa 1976).

It is also crucial to note that " '[t]he degree of vagueness that the constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depend in part on the nature of the enactment.' " *Jim O. Inc.*, 587 N.W.2d at 478 (quoting *Duncan*, 414 N.W.2d at 96). Thus, a law that interferes with the exercise of a fundamental right would be examined more closely than one that does not. *See id.* At this point, we digress from a recitation of the applicable legal principles to identify the right at issue. Neither the defendant's right to pursue higher education, his right to study the vices of society, nor his right to communicate his ideas with respect to such vices are at issue here. The conduct at issue here is the defendant's right to possess child pornography. That "right" is not constitutionally protected. *See Osborne v. Ohio*, 495 U.S. 103, 111, 110 S.Ct. 1691, 1697, 109 L.Ed.2d 98, 110 (1990) (holding that the state "may constitutionally proscribe the possession and viewing of child pornography"); *New York v. Ferber*, 458 U.S. 747, 761, 102 S.Ct. 3348, 3357, 73 L.Ed.2d 1113, 1125 (1982) (rejecting, with respect to child pornography, standard that would require the material to have no "serious literary, artistic, political, or scientific value," noting that "[i]t is irrelevant to the child [who has been abused] whether or not the material ... has a literary, artistic, political, or social value"); *Ferber*, 458 U.S. at 774, 102 S.Ct. at 3364, 73 L.Ed.2d at 1134 (O'Connor, J., concurring) (noting that majority opinion does not require the state to permit the possession of child pornography that has "serious literary, scientific, or educational value").

In considering the vagueness of a statutory term, we apply the following rule:

> A statutory term provides fair warning if the meaning of the word "is [to be] fairly ascertainable by reference to similar statutes, prior judicial determinations, reference to the dictionary, or if the questioned words have a common and generally accepted meaning."

*Hunter*, 550 N.W.2d at 465 (quoting *State v. Kueny*, 215 N.W.2d 215, 217 (Iowa 1974)). An evaluation of the vagueness of a statute also requires that the statute be

considered in the context of the entire statutory scheme of which it is a part. *See Saadiq v. State*, 387 N.W.2d 315, 321 (Iowa 1986).

 E. *Analysis of vagueness claim.* We think that the defendant's vague-as-applied challenge fails because the statutory exemption does not apply to him "under any construction." To demonstrate the validity of this conclusion, we begin with an examination of the exemption and its statutory history.

Section 728.7 was first enacted in 1974 as part of an act "relating to the dissemination and exhibition of obscene material to minors and lascivious acts with certain minors." 1974 Iowa Acts ch. 1267. This "obscenity and indecency" statute, codified at Iowa Code chapter 725 (1975) and later transferred to its current location in chapter 728, was directed at two types of criminal conduct. First, the statute prohibited the dissemination or exhibition of obscene materials to minors, and the admission of minors to premises where obscene material is exhibited. *See* 1974 Iowa Acts ch. 1267, §§ 2, 3 (codified at Iowa Code §§ 725.2, .3 (1975) and later transferred to Iowa Code §§ 728.2, .3). In addition, the act made it a crime to perform lascivious acts with minors under the age of sixteen. *See* 1974 Iowa Acts ch. 1267, § 10 (codified at Iowa Code § 725.10 (1975) and later transferred to Iowa Code § 728.10). The exemption adopted in 1974, which is identical in all pertinent respects to the exemption at issue here, clearly was intended to apply to the first category of prohibited conduct: the dissemination or exhibition of obscene materials to minors, including the mere admission of minors to premises where obscene material is displayed.

Nothing in this Act prohibits the use of appropriate material for educational purposes in any accredited school, or any public library, or in any educational program *in which the minor is participating.* Nothing in this Act prohibits the attendance *of minors* at an exhibi-

tion or display of art works or the use of any materials in any public library. 1974 Iowa Acts ch. 1267, § 5 (emphasis added) (codified at Iowa Code § 725.5 (1975)). The only difference in the current exemption is that the word "Act" has been changed to "chapter."

To understand the statutory scheme as it was originally designed, it is also helpful to review the statutory definition of "obscene material":

"Obscene material" is any material depicting or describing the genitals, sex acts, masturbation, excretory functions or sado-masochistic abuse which the average person, taking the material as a whole and applying contemporary community standards with respect to *what is suitable material for minors,* would find appeals to the prurient interest and is patently offensive; and the material, taken as a whole, lacks serious literary, scientific, political or artistic value.

1974 Iowa Acts ch. 1267, § 1 (emphasis added) (codified at Iowa Code § 725.1(1) (1975) and later transferred to Iowa Code § 728.1(1)). It is important to note that the original obscenity statute did not prohibit the dissemination, possession, or display of obscene material *in general,* but only with respect to *minors.* In other words, so long as minors were not involved, the dissemination, possession, or display of obscene materials was not prohibited. This fact is not surprising when one remembers that, under the statutory definition of "obscene material," material is classified as obscene because it is unsuitable for *minors.*

 The legislature apparently found the prohibitions in chapter 728 to be inadequate regulation in this area because two provisions focused on hard-core pornography and child pornography were subsequently added to the obscenity chapter. In 1976, the general assembly enacted a statute prohibiting the sale of "patently offensive" materials, which are more particularly described in the statute and are commonly known as "hard-core pornogra-

phy." *See* 1976 Iowa Acts ch. 1245, § 2804 (codified at Iowa Code § 728.4 (1979)). Unlike the statutes governing "obscene material," which focused on keeping such materials out of the hands of minors, the hard-core pornography statute applied to the sale of such materials to any person, minor or adult. *See* John L. Yeager & Ronald L. Carlson, *Criminal Law and Procedure* § 633, at 158 (1979) [hereinafter "Yeager"].

Of particular relevance to the present discussion is the second section added by the legislature, which pertains to child pornography. In 1978, the legislature enacted a statute prohibiting the sexual exploitation of a minor by causing the minor to engage in a prohibited sexual act intending that the act be photographed or filmed. 1978 Iowa Acts ch. 1188, § 1 (codified at Iowa Code § 728.12(1) (1979)). The crime of sexual exploitation of a minor was expanded in 1983 by the addition of a subsection that prohibited the promotion of "any material depicting a live performance of a child engaged in a prohibited sexual act." 1983 Iowa Acts ch. 167, § 4 (codified at Iowa Code § 728.12(2) (Supp.1983)). The crime of sexual exploitation of a minor was expanded a second time in 1986 to add a third alternative prohibiting the purchase of a print or visual medium "depicting a child engaging in a prohibited sexual act." 1986 Iowa Acts ch. 1176, § 3 (codified at Iowa Code § 728.12(3) (1987)). The final expansion of section 728.12 occurred in 1989 when the general assembly amended the third alternative to prohibit not only the purchase of child pornography, but also the mere possession of child pornography, the crime of which the defendant was convicted. *See* 1989 Iowa Acts ch. 263, § 3 (codified at Iowa Code § 728.12(3) (Supp. 1989)).[3] We also note that the legislature enacted an exception applicable solely to section 728.12(3): "this section does not apply to law enforcement officers, court

personnel, licensed physicians, licensed psychologists, or attorneys in the performance of their *official* duties." *Id.* (emphasis added) (codified at Iowa Code § 728.12(3) (Supp.1983)).

An examination of section 728.12 reveals that it differs in two material respects from the original obscenity law prohibiting the dissemination or exhibition of *obscene* materials to *minors. See generally State v. Gilmour*, 522 N.W.2d 595, 598 (Iowa 1994) (holding that "the offenses of dissemination and exhibition of obscene material to minors under section 728.2 and sexual exploitation of a minor under section 728.12(1) are markedly different with respect to the nature of the criminal activity"). First of all, the crime of sexual exploitation is aimed at the creation, dissemination, and possession of *child pornography*, rather than merely obscene materials. Obscene materials, as defined in chapter 728, are regulated on the basis that they are unsuitable for minors. Child pornography, on the other hand, is regulated because its mere creation is harmful to children in that it exploits children in undesirable and perverse ways. The crime of sexual exploitation differs from the regulation of obscene material in an even more important aspect: the prohibitions relating to child pornography apply to *everyone*, not just minors. In other words, the legislature has made child pornography illegal in its entirety; child pornography is, in essence, contraband.

With this context in mind, we now examine whether under any reasonable construction of the educational exemption a person of ordinary intelligence could believe that the exemption permits the possession of child pornography contrary not only to the express prohibition of section 728.12(3), but also in conflict with the self-contained enumerated exceptions to section 728.12(3) and the obvious legislative

---

**3.** This amendment also changed all references to "child" in section 728.12 to "minor." *See*

1989 Iowa Acts ch. 263, § 3.

intent to completely eliminate child pornography from the state.

Preliminarily, we note that the educational exemption protects only the "use" of appropriate material, i.e., the employment of the material in some activity. *See* Webster's Third New International Dictionary 2523 (unabr. ed.1993) (defining "use" as "employment"). It does not specifically authorize the *possession* of appropriate material. Thus, the exemption presupposes lawful possession. Although chapter 728 does not prohibit the possession of "obscene material," it does prohibit the possession of child pornography. Therefore, it would be inconsistent to construe the exemption as authorizing the use of contraband—material that one cannot lawfully possess.

There is another defect in the defendant's argument that the exemption could reasonably be understood to apply to him. As the defendant acknowledges in his brief, this exemption was intended by the legislature to provide some leeway to libraries and educational institutions that would otherwise have to determine whether material in their legitimate possession was, nonetheless, obscene and not viewable by minors. Absent the exemption, these entities would have to decide whether the materials were "suitable" for minors and had "serious literary, scientific, political or artistic value" in order to decide whether such materials could be made available to minors. *See* Iowa Code § 728.1(1) (defining "obscene material"). As one authority has observed, "this exception does have the effect of relieving school personnel, public libraries, and museum curators of the burden of justifying each bit of material which may be used or displayed by them." Yeager § 636, at 158.

The purpose of this exemption is simply inapplicable to child pornography. Child pornography is contraband regardless of whether it has any "serious literary, scientific, political or artistic value." *See Ferber*, 458 U.S. at 761, 102 S.Ct. at 3357,

73 L.Ed.2d at 1125; *id.* at 774, 102 S.Ct. at 3364, 73 L.Ed.2d at 1134 (O'Connor, J., concurring). Child pornography is contraband in anyone's hands, minor or adult. Therefore, libraries and educational institutions have no occasion to determine whether child pornography is suitable for minors or has "serious literary, scientific, political or artistic value." Accordingly, there is no need for an exemption in this area, as there is in the case of obscene material, where such determinations must necessarily be made.

Ignoring for the moment these fundamental flaws in the defendant's contention that the exemption applies to him, we turn now to a consideration of whether the phrase "appropriate material" is reasonably susceptible to a construction that includes child pornography. We think it is not. The dictionary definition of the word "appropriate" is "specially suitable : FIT, PROPER." Webster's Third New International Dictionary 106 (unabr. ed.1993). Whatever doubts there may be about what constitutes "appropriate material" under other facts, we think there is no doubt that child pornography does not fit within the definition of "appropriate."

It is important to keep in mind that the material at issue here is not merely "obscene material," as defined in the statute. At issue are depictions of

1. *children* engaged in sexual contact, actual or simulated, by "penetration of the penis into the vagina or anus; contact between the mouth and genitalia or by contact between the genitalia of one person and the genitalia or anus of another person; contact between the finger or hand of one person and the genitalia or anus of another person," Iowa Code § 702.17 (defining "sex act"),

2. *children* engaged in an act of bestiality, *see id.* § 728.1(6)(*b*),

3. *children* having their pubes or genitals fondled or touched, *see id.* § 728.1(6)(*c*),

4. *children* fondling or touching the pubes or genitals of another person, *see id.* § 728.1(6)(*d*),

5. *children* being subjected to "[s]adomasochistic abuse ... for the purpose of arousing or satisfying the sexual desires of a person who may view a depiction of the abuse," *id.* § 728.1(6)(*e*),

6. *children* subjecting another person to "[s]adomasochistic abuse ... for the purpose of arousing or satisfying the sexual desires of a person who may view a depiction of the abuse," *id.* § 728.1(6)(*f*), and

7. *children* nude "for the purpose of arousing or satisfying the sexual desires of a person who may view a depiction of the nude minor," *id.* § 728.1(6)(*g*).

*See id.* § 728.12(1)-(3) (prohibiting the production, promotion, purchase, and possession of depictions of a minor engaging in "a prohibited sexual act" as defined in section 728.1(6)). We conclude that under no construction of the statute would a reasonably intelligent person believe that such material, showing *children* engaged in sexual acts, is "appropriate." Unlike obscene material, which adults can legally possess, the possession of child pornography, as well as its production and promotion, are absolutely prohibited. *See generally* Yeager §§ 633, 641, at 158, 160. It is clear from a reading of chapter 728 that the legislature sought to entirely eradicate child pornography from this state. *See Osborne*, 495 U.S. at 109, 110 S.Ct. at 1696, 109 L.Ed.2d at 109 (noting that Ohio statute prohibiting production, distribution, and possession of child pornography was designed "to destroy a market for the exploitative use of children").

Given this statutory scheme, it would be unreasonable to believe that child pornography would ever be appropriate or suitable, even in an educational or literary environment. *See generally Freeman v. Commonwealth*, 223 Va. 301, 288 S.E.2d 461, 465 (1982) (noting, in considering constitutional vagueness challenge to similar statute, that "the paramount legislative

goal was to protect children from the harm they suffer when they are induced to become models for such materials, *irrespective of the motive or intent of the offender*" (emphasis added)). As the United States Supreme Court noted in *Ferber*, if "visual depictions of children performing sexual acts or lewdly exhibiting their genitals [is] an important and necessary part of a[n] ... educational work," options other than using depictions of actual children are available. 458 U.S. at 763, 102 S.Ct. at 3358, 73 L.Ed.2d at 1126. These alternatives included using "a person over the statutory age who perhaps looked younger," or other "[s]imulation outside of the prohibition of the [child pornography] statute." *Id.*

Our reasoning that the statutory exemption is not vague as applied to the defendant can perhaps best be summarized as follows: If it is illegal and correspondingly inappropriate to *produce* child pornography, and is illegal/inappropriate to *distribute* child pornography, and is illegal/inappropriate to *purchase* child pornography, and is illegal/inappropriate to *possess* child pornography, how is it reasonable to construe section 728.7 as evidencing the legislature's intent that it is, nonetheless, legal and appropriate to *use* child pornography? Such a construction is directly contrary to the legislature's goal to eliminate any market for such material. We hold that the defendant's conduct clearly falls outside the parameters of the statutory exemption.

We have not ignored the defendant's assertion that an interpretation of the exemption to exclude child pornography renders the exemption meaningless; we simply do not agree with this conclusion. Even though the exemption does not protect the possession of child pornography, it continues to encompass obscene materials falling outside the scope of section 728.12, provided the requirements of the exemption are otherwise met. Whether the term "appropriate materials" may be vague with respect to the scope of protection provided for the possession of

obscene materials is not relevant to our analysis. *See Hunter,* 550 N.W.2d at 465 (noting that "[t]he fact that the statute may be vague as applied to *other* factual scenarios is irrelevant" (emphasis added)). We simply hold that the statutory exemption is not vague as applied to the defendant, who was charged with the possession of child pornography.

In summary, the defendant has failed to sustain his burden to show that section 728.7 "clearly, palpably and without doubt infringes the constitution." *See American Dog Owners Ass'n,* 469 N.W.2d at 417. We are simply not convinced "beyond a reasonable doubt" that he has demonstrated the unconstitutional vagueness of the statute. *See Duncan,* 414 N.W.2d at 95. For these reasons, we reject the defendant's claim that section 728.7 is vague as applied to him.

### III. *Disposition.*

The defendant also asserts that his trial counsel was ineffective in allowing him to waive his First Amendment challenge to the statute by pleading guilty. Both the defendant and the State ask that we preserve this claim for a possible post-conviction relief action. Therefore, we affirm the defendant's conviction, but preserve his ineffective-assistance-of-counsel claim.

**AFFIRMED.**

All justices concur except CARTER, J. and McGIVERIN, C.J., who concur specially, and SNELL, J., who dissents.

CARTER, Justice (concurring specially).

I agree that the defendant's conviction should be affirmed. His guilty plea waived any contention that the statute is vague as applied. I do not believe that we may only apply this legal conclusion in a prospective manner. Consequently, I would not reach the constitutional challenge to the statute as applied to defendant. On the merits of that issue, I agree that the statute is not vague, as applied, but I disagree with the suggestion that the words "appropriate material" for educational or library use may never under any circumstances include visual depictions of children that might be described as child pornography.

McGIVERIN, C.J., joins this special concurrence.

SNELL, Justice (dissenting).

I respectfully dissent.

The majority has reached its result by invading the domain of the legislature which, under our structure of government, is given the sole responsibility to create the law. In so doing, it has violated the separation of powers doctrine and concomitantly inverted our cardinal rule of statutory construction. *See State v. Wagner,* 596 N.W.2d 83, 89 (Iowa 1999). That rule directs us to look first to the words of the statute to determine if its meaning is ambiguous. *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Mobil Oil Corp.,* 606 N.W.2d 359, 363 (Iowa 2000). If it is, only then may the court resort, for help in finding its meaning, to legislative history. *State v. Rodgers,* 560 N.W.2d 585, 586 (Iowa 1997).

Instead of following this procedure of ageless acceptance, the majority has begun its analysis by charting the legislative history of the obscenity statutes. *See, e.g., Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd.,* 606 N.W.2d at 379–80; *State v. Burke,* 368 N.W.2d 182, 185 (Iowa 1985); *Iowa–Illinois Gas & Elec. Co. v. City of Bettendorf,* 241 Iowa 358, 361–62, 41 N.W.2d 1, 3–4 (1950); *Smith v. Sioux City Stock Yards Co.,* 219 Iowa 1142, 1148, 260 N.W. 531, 534 (1935); *Slaats v. Chicago, Milwaukee & St. Paul Ry.,* 149 Iowa 735, 743, 129 N.W. 63, 66 (1910). From this it concludes that, although there are no statutory words that say so, the legislature must have intended to eliminate all exemptions for the use of appropriate material for educational purposes that have child pornography as its subject matter. This con-

clusion forms the predicate for the majority's deduction that the exemption statute, Iowa Code section 728.7, is not ambiguous and as such presents no constitutional problem based on vagueness. The majority also decides that the exemption statute is a nullity and cannot apply to any case involving child pornography because the history of obscenity statutes passed by the legislature shows legislative intent to so act.

I dissent because the majority has strayed from our charge as a separate branch of government and from our traditional track of analysis in statutory construction cases. In following its course of analysis, the majority has backed into its result. Its conclusion that the exemption statute is not ambiguous and a nullity because of the legislative history of other statutes left nothing to construe. The statutory construction doctrine was left in its wake.

I believe the plain meaning of the words in the exemption statute, rather than legislative history, dictates the result in this case. If a statute is not ambiguous, this court need not look any further. It is improper to use legislative history of other statutes to come to a conclusion that a statute is not ambiguous. *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd.*, 606 N.W.2d at 365; *State v. McSorley*, 549 N.W.2d 807, 809 (Iowa 1996).

### I. Nothing Means Nothing

The language of the exemption is very clear. Iowa Code § 728.7 (1999). The exemption reads:

> Nothing in this chapter prohibits the use of appropriate material for educational purposes in any accredited school, or any public library, or in any educational program in which the minor is participating. Nothing in this chapter prohibits the attendance of minors at an exhibition or display of art works or the use of any materials in any public library.

*Id.* "*Nothing in this chapter*" states an absolute. *See id.* (emphasis added). The legislature did not say that some things applied or that only specific sections would fall under the exemption. The language evidences an intent to apply *every* listed crime in chapter 728 to the exemption for educational purposes.

The legislature added the crime of child pornography to chapter 728 in the same year the final version of the exemption became effective. 1978 Iowa Acts ch. 1188, § 1 (codifying the prohibition of child pornography at Iowa Code section 728.12); 1976 Iowa Acts ch. 1245, § 2806 (effective Jan. 1, 1978) (amending the exemption at Iowa Code section 728.7, originally enacted at Iowa Code section 725.5 (1974)). The version of the exemption, as it still reads today, linked its application to the entire chapter by adding the word "chapter" to its language. 1976 Iowa Acts ch. 1245 § 2806. The closeness in time between the final amendment of the exemption extending its reach to the entire chapter and the child pornography statute suggests that the legislature did not inadvertently commingle the two in the same chapter. The exemption continued to be applicable to all legislation within the chapter.

The legislature had every opportunity to (1) create a new chapter for child pornography so that it would not fall under the exemption, (2) place language in section 728.12 stating the exemption did not apply to it, or (3) amend the exemption to preclude its application to section 728.12. The legislature did none of these things. In fact, the two sections have coexisted together in the same chapter for twenty-two years and neither has been amended to exclude the other. Moreover, it is clear that the legislature knew how to limit its exemptions under this chapter. The obscenity provisions used to be located within chapter 592. *See* Iowa Code §§ 13183–13197 (1939). An exemption for druggists and doctors was contained in chapter 592 during this period. *Id.* § 13195. This ex-

emption specifically limited its scope to certain sections within the chapter. *See id.* No such exclusive language exists in section 728.7. Further, when the legislature enacted the predecessor to section 728.7 in 1974, it specifically applied the exemption for educational purposes to section 725.10 titled "Lascivious acts with persons under the age of sixteen years." Iowa Code § 725.5 (1975). This suggests the legislature recognized that even this prohibited act with a minor could be exempted in an educational setting.

While I recognize that child pornography is the most deleterious of all obscenity, I cannot ignore the plain meaning of the exemption. The court cannot do the job of the legislature and impose restrictions on the scope of a statute which do not exist. *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd.,* 606 N.W.2d at 379 ("We determine the intent from what the legislature said, not from what it might or should have said."). As it is written, child pornography is *included* in the exemption. If child pornography was not meant to fall within the exemption, that is for the legislature to decide by amending the statutory exemption. *Moulton v. Iowa Employment Sec. Comm'n,* 239 Iowa 1161, 1172, 34 N.W.2d 211, 216 (1948) ("The court is not at liberty to read into the statute provisions which the legislature did not see fit to incorporate, nor may it enlarge the scope of its provisions by an unwarranted interpretation of the language used." (quotations and citation omitted)).

Such judicial legislating is expressly prohibited by the separation of powers doctrine. *Webster County Bd. of Supervisors v. Flattery,* 268 N.W.2d 869, 872–74 (Iowa 1978); *Jahnke v. Inc. City of Des Moines,* 191 N.W.2d 780, 797 (Iowa 1971) (Reynoldson, J., dissenting). "To subject [a] clearly worded statute to interpretation would usurp the prerogatives of the legislature. . . . This would effectively deprive the legislature of its power to create and declare [the law]." *Burke,* 368 N.W.2d at

185. One legal authority has noted: "[T]he enumeration of exceptions from the operation of a statute indicates that it should apply to all cases not specifically excepted." 2 Jabez Gridley Sutherland, *Statutes & Statutory Construction* § 4916 (3d ed. 1943 & Supp.1971). In other words:

> We are not justified in erecting a bar where the legislature did not so provide. The express mention of the one thing implies the exclusion of the other. This rule is expressed in the often quoted Latin phrase "expressio unius est exclusio alterius." We have said: The legislative intent is expressed by omission as well as by inclusion.

*North Iowa Steel Co. v. Staley,* 253 Iowa 355, 357, 112 N.W.2d 364, 365 (1961).

The court cannot impose restrictions on a statute which do not exist. "For us to fashion such a rule would simply constitute judicial legislation." *Bruns v. State,* 503 N.W.2d 607, 612 (Iowa 1993). "A contrary holding would simply be judicial legislation in the guise of judicial interpretation." *Slager v. HWA Corp.,* 435 N.W.2d 349, 357 (Iowa 1989). To exclude child pornography from the exemption, as the majority has done, evidenced "more than a modest amount of judicial legislation." *See Shell Oil Co. v. Bair,* 417 N.W.2d 425, 429 (Iowa 1987). The majority effectively rewrote the statute.

In another statutory interpretation case, the appellant sought to limit the statute in question to apply only to particular areas. *Klaes v. Scholl,* 412 N.W.2d 178, 179 (Iowa 1987) (interpreting Iowa Code § 686.15 (1987)). That is what the State is asking us to do here. In *Klaes,* we appropriately held: "In view of the clear language of the statute, however, interpreting [the section] to limit [what it applies to] would be tantamount to judicial legislation, and we decline to do so." *Id.*

In response to an attempt to expand a statute to include certain areas not listed, this court held:

It may be conceded that the legislature, if it saw fit to do so, might make such a provision. As the law stands, however, no such provision has been made by the legislature, and it is not the province of the court to enact such a provision by what is sometimes referred to as judicial legislation.

*Graves v. Eagle Iron Works,* 331 N.W.2d 116, 118 (Iowa 1983). That same analysis applies here where the majority limits the exemption statute to what it thinks the statute ought to be limited to. To create an exception to the exemption effectively usurps "the prerogative of the legislature to declare what the law shall be." *State ex rel. Lankford v. Mundie,* 508 N.W.2d 462, 463 (Iowa 1993).

The Iowa Constitution expressly separates the judiciary from the other two branches of government. "The powers of the government of Iowa shall be divided into three separate departments—the legislative, executive, and the judicial: and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others...." Iowa Const. art. III, § 1. We have previously recognized that "[e]ach department must remain independent if the constitutional safeguards are to be maintained. For the judiciary to play an undiminished role as an independent and equal coordinate branch" it must not encroach upon the authority of the other departments. *Flattery,* 268 N.W.2d at 873.

It is not within the power of the judiciary to create exceptions to an unambiguous statute which do not exist in the plain language. The province of the judiciary is to construe statutory law, not to make law not passed by the legislature. "[W]hat is desirable or advisable or ought to be is a question of policy, not a question of fact. What is necessary or what is in the best interest is not a fact and its determination by the judiciary is an exercise of legislative power." *Warren County v. Judges of the Fifth Judicial Dist.,* 243 N.W.2d 894, 903

(Iowa 1976) (quotations and citation omitted); *see Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd.,* 606 N.W.2d at 379.

## II. The Only Material in Need of the Exemption Is Child Pornography

"Nothing in this chapter prohibits the *use* of appropriate material for educational purposes in any accredited school...." Iowa Code § 728.7 (emphasis added). Section 728.12(3) states that it is illegal for a person to knowingly possess child pornography. By contrast, the use of obscene materials is not similarly prohibited. A person is only guilty of a criminal act in regard to obscene materials when he has the intent to "knowingly rent[ ], sell[ ], or offer for rental or sale material depicting patently offensive representations...." *Id.* § 728.4.

In *State v. Schrup,* we held that a defendant could not be charged with the mere possession of obscene materials without also having the intent to distribute them. *State v. Schrup,* 229 Iowa 909, 911, 295 N.W. 427, 428 (1940). The court determined:

> The legislature was not concerned by the mere possession of obscene pictures. The purpose of the act is to guard the public morals, to discourage the dissemination of the pictures which tend to corrupt and debauch the morals of those minds [that] are susceptible to such lecherous influences. Hence, the requirement that to constitute a crime, the possession must be with the intent to sell, loan or give away the obscene pictures.

*Id.* at 910–11, 295 N.W. at 428 (discussing Iowa Code section 13190 which was an earlier counterpart of section 728.4).

Use of obscene materials by a student in a college class for a report is not consistent with the intent to sell, rent, or loan the material. As such, this student could not be guilty for merely *possessing* obscene materials without the required in-

tent. For this reason, the student would not need the protection of the first sentence of the exemption in section 728.7 which exempts from the commission of a criminal act, "the use of appropriate material for educational purposes." Similarly, a professor using the material to teach the class does not have the intent to sell, rent, or loan the material and this teacher would also not need the aid of the exemption.

If the first sentence of the exemption is not necessary for obscene materials, what other purpose could it have under chapter 728? The *obvious reason* behind the first sentence of the exemption, "[n]othing in this chapter prohibits the use of appropriate material for educational purposes in any accredited school," is to exempt child pornography in this limited area. Under the majority's conclusion that all child pornography is never appropriate what is the point of this first sentence? The majority opinion gives the first sentence of section 728.7 absolutely no meaning because it would not exempt anything under chapter 728.

### III. The Meaning of "Appropriate"

This court has recognized that "we ... seek a reasonable interpretation and construction which will best effect the purpose of the statute, seeking to avoid absurd results." *State v. Link*, 341 N.W.2d 738, 740 (Iowa 1983) (citations omitted). I find that applying child pornography to the exemption does not create an absurd result for the following reasons.

The majority concludes that because child pornography is always inappropriate, "appropriate material" is not an ambiguous term. The majority looks at "appropriate material" by viewing the *nature* of the material itself. The exemption should actually be read to define appropriate by its *use* rather than its nature. The conclusion should follow then that any material used for actual educational purposes will be appropriate. In other words, any material in chapter 728 will be appropriate if it is used for a bona fide educational purpose. The

nature of the material is irrelevant because the exemption states that *no provision* will prohibit the use of such materials in an educational setting.

The majority's opinion is wrong because it interprets the exemption in direct opposition to its plain meaning. Effectively the majority rewrites the exemption to state: "Nothing in this chapter, *excluding child pornography* ...." There is no basis for this radical departure from the plain words of the exemption. The court merely states it knows the exemption does not apply to child pornography. Further, section 728.12(3) makes it a crime to *depict* child pornography with any visual medium. A depiction is not just a picture, it includes the written word as well. The American Heritage Dictionary defines depict as: "1. To represent in a picture or sculpture. 2. To represent in words; describe." The American Heritage Dictionary 383 (2d ed.1985). As such, this holding is expansively broad, possibly making criminal a professor's use of any materials, the printed word or pictures, to discuss child pornography and studies done about it. Likewise, because section 728.12(3) applies to a "book, magazine, or other print or visual medium," the majority's holding will criminalize a student's use of any material to write a research paper which explores the effect child pornography has on society.

The majority's decision has broken the barrier between judging and legislating. This is ill advised, contrary to established law and a hauntingly bad precedent.

I would vacate Robinson's guilty plea, reverse Robinson's conviction, and remand for dismissal of the charges.