H. G. Peverill, Appellant, v. Department of Agriculture, Iowa, et al., Defendants, Appellees; R. R. Cheney et al., Interveners.

No. 41735.

November 22, 1932.

Rehearing Denied June 21, 1933.

E. A. Sager, and H. J. Ferguson, for appellants.

John Fletcher, Attorney-general, Earl F. Wisdom, Assistant Attorney-general, and John W. Gwynne, County Attorney, for appellees.

Claussen, J.—Appellants are farmers in Black Hawk county. Appellees are officers more or less concerned in the testing of cattle

for tuberculosis in that county. The questions raised by the appeal arise under chapter 129 of the Code (section 2665 et seq.), relating to the eradication of bovine tuberculosis and chapter 128 (section 2643 et seq.), relating to infectious and contagious diseases among animals.

▆▆▆ I. The first question arises under the following language of Code, section 2668:

*"Before being tested,* such animals *shall* be appraised at their cash value for breeding, dairy, or beef purposes * * * " (Italics are ours.)

Appellants contend that cattle may not be tested lawfully until after they have been appraised.

An examination of the provisions of chapter 129 of the Code leads inevitably to the conclusion that the legislature intended to provide a speedy method for testing cattle for tuberculosis, and to secure the prompt destruction, or effective quarantine, of infected animals. It is evident, from such provisions, that the legislature did not intend to create a situation in which an owner of cattle could evade the test. It is a cardinal rule of statutory construction that legislative enactments shall be construed in such a manner that the ends of the enacting body may be accomplished. If the above-quoted provisions are construed to be mandatory, there can be no speedy and certain administration of the other provisions of the chapter. It is provided by section 2668 of the Code that, if the owner and testing authorities cannot agree, the appraisement shall be made by three parties, one to be selected by the owner, one by the state department of agriculture, and the third by the first two appointed. If the quoted provisions are mandatory, the owner of cattle could obstruct the speedy and certain administration of the law, either by failing to appoint an appraiser or by appointing one who would not agree upon a third.

It may be assumed, although not now decided, that the owner of an animal, actually infected with tuberculosis, is entitled to have its value determined as though it were free from the disease. Such value can be determined readily after the test is made. A large part of the work of courts consists of the determination of the value of property damaged or totally destroyed. Such work has presented no serious obstacle. Neither would the testing of cattle seriously impede the appraisement body in the determination of values.

The attention of the court has not been called to any right of the owner which is invaded by testing his cattle prior to appraisement.

Appellees contend that under provisions of Code, section 2675, which is a part of chapter 129 of the Code, cattle may be tested before the appraisement is made. Its language is:

"The department may at any time, on its own motion, make an examination of any herd, and in case animals are destroyed, the appraisement and payment shall be made as provided in this chapter."

The contention is plausible, but appellants contend that the word "examination" as used in said section does not embrace the administration of the tuberculin test. The legislature has settled this difference between appellees and appellants. Section 2666 of the Code provides:

"Said department shall proceed with the examination, *including the tuberculin test,* of all such cattle as rapidly as practicable." (Italics are ours.)

This language indicates that the legislature did not intend to differentiate between an examination and the administration of the tuberculin test, but regarded the tuberculin test as a part of the examination.

Appellants contend that section 2666 is obsolete. It is a part of the existing statutory law of the state. Courts cannot repeal acts of the legislature by declaring them obsolete.

It follows, from what has been said, that appellants were not entitled to the restraining order prayed for, merely because appellees contemplated testing the cattle before appraisement was made.

II. Appellants next complain that appellees contemplated testing the cattle without giving notice of the day and hour of the proposed testing. The attention of the court is directed to no provision of the law requiring such notice. A careful search of the chapter fails to disclose any language from which it may be inferred that such notice was either contemplated or required by the legislature. It is true that by section 2699 of the Code the owner is required to confine his cattle in a proper place so that the test can be applied, but this provision cannot be held to contemplate the service of a formal notice specifying the day and hour when the examination will be made.

III. It is contended by appellants that a bond should be required of the veterinary designated to administer the test, to indemnify the owner from loss in case cattle are wrongfully destroyed and against loss due to carelessness or negligence of such veterinary. This contention springs from the suggestion in Loftus v. Department of Agriculture, 211 Iowa 566, 232 N. W. 412, that the veterinary is answerable in damages for the wrongful destruction of cattle. It is the thought of appellants that the right to recover from one who is not financially responsible is a naked right, and that actual recovery should be insured by bond. The answer to the contention is that the legislature has not required the bond. Courts have no power to add to the law. The only question presented by the record, in connection with this contention, is as to the power of the court to require the administrative officers to give bond. The court does not have this power.

IV. There are two sources of funds from which compensation for destroyed animals and expense of administration of the law may be paid. One is an allotment by the state. The other is the county tuberculosis eradication fund. Such items are paid from the state allotment until it is exhausted, after which they may be paid from the county tuberculosis eradication fund. The record discloses that at the time of trial a substantial balance was in the state allotment, but that the county tuberculosis eradication fund was overdrawn.

Code, section 2692, is as follows:

"Whenever the balance in such fund becomes less than $2,500 the county auditor shall notify the department in writing of such fact and no expense shall be incurred on such account in excess of the cash available in such fund."

Appellants contend that, since the said county fund was overdrawn, the contemplated work of testing their cattle would be unlawful. This contention cannot be sustained, for the reason that under the record the expense incident to such testing would be paid out of the state allotment and consequently such expense is not incurred on the account of such county fund. The question as to whether appellees should be restrained, if such expense were on the account of such county fund, is not presented by the record and is not decided.

Code, section 2652, provides that no cattle infected with tuber-

culosis shall be killed without the owner's consent unless there shall be sufficient funds to pay for such cattle. This section in no wise alters the situation, for the record discloses substantial sums of money in the state allotment fund.

The trial court was not in error in denying the injunctions; consequently its decrees are affirmed.—Affirmed.

STEVENS, C. J., and EVANS, ALBERT, and KINDIG, JJ., concur.

BLISS, J., not taking part.