Iowa-Illinois Gas & Electric Company, a corporation, et al.,
appellants, v. City of Bettendorf, a municipal
corporation, et al., appellees.

No. 47564.

(Reported in 41 N.W. 2d 1)

February 7, 1950.

Lane & Waterman, of Davenport, for appellants.

Albert J. Stafne, of Bettendorf, and Carl H. Lambach, of
Davenport, for appellees.

MANTZ, J.—On September 29, 1948, the city council of Bettendorf, Iowa, adopted a resolution that certain described real estate contiguous to said city be annexed thereto and provided that said proposition be submitted to the voters of the City of Bettendorf at the regular general election to be held on November 2, 1948, and provided that notice of said election, as prescribed by section 362.28, subparagraph 2, Code of 1946, be given. Said notice was given and at the general election held on said date the proposal carried. The vote was 1667 for and 170 against said proposal. After a canvass of the vote and a determination of the result the city took steps to carry out said annexation.

Certain taxpayers, plaintiffs herein, brought suit to enjoin said city and its officials from proceeding with said annexation, alleging that the proposition should have been submitted to the voters at a regular municipal election, and therefore the election was of no validity and conferred upon said city no power or authority to proceed further with such annexation. Plaintiffs prayed that said defendants and each of them be restrained and enjoined from further proceedings. The defendants denied the claims as made by plaintiffs and alleged that the City of Bettendorf, Iowa, through its officials had proceeded according to law as set forth in section 362.28, Code of 1946, and prayed that plaintiffs' petition be dismissed.

The court made findings of fact and conclusions of law in which plaintiffs' petition was denied and dismissed and costs taxed to plaintiffs. This appeal followed.

I. The principal issue in the case involves the construction to be given to section 362.28, Code of 1946, pertaining to an annexation of unplatted property to a city or town. Said section, so far as pertinent, reads as follows:

"Unplatted territory. Territory, not platted, adjoining any city or town may be annexed thereto and become a part thereof by proceeding as follows:

"1. The council may provide by resolution adopted at least one month before any regular election, for the annexation of territory described therein.

"2. The proposition shall be submitted to the voters at said election in the following form:

" 'Shall the proposition to annex the territory described in the resolution adopted by the council of the city (or town) of .... on the .... day of .... be approved?' Notice of the submission of said proposition shall be given by publication in a newspaper of general circulation in said city or town once each week for four consecutive weeks preceding said election."

Appellants' claim is that said section 362.28 did not apply and that the provisions of section 363.5 governed so far as the time of the submission of the proposed annexation was concerned. Thus it will be seen that the city claims that the question was properly submitted on November 2, 1948, as it was "any regular election" as provided by said section, while appellants make denial thereof. Said claim by the appellants is the principal issue in this lawsuit.

In its essence, appellants' claim is that the proposed annexation should have been voted upon at the municipal or city election and that the law properly construed did not authorize such election as the November 2, 1948 election.

We quote the first proposition relied upon by appellants. "The regular election referred to in section 362.28 is the regular municipal election prescribed by section 363.5 of the 1946 Code."

The part relied upon by appellants in said section 363.5 is as follows: "Regular city and town elections shall be held on the last Monday in March, and elective officers shall be chosen biennially to succeed officers whose terms expire."

Above, we have set out from section 362.28, the provision of the 1946 Code followed by the City of Bettendorf in said election. "The council may provide by resolution adopted at least one month before *any regular election*, for the annexation of territory described therein." (Italics supplied.)

We are unable to see any ambiguity or uncertainty in the above-quoted paragraph and particularly in the words, "any regular election." Its application to the record facts presents no difficulty. It can hardly be said that there is any uncertainty to the normal meaning of such words.

██ II. Our court has had before it many times the rules to be applied in the construction of statutes. In the early case of Dubuque County v. Dubuque & Pacific R. Co., 4 (Greene) Iowa 1, 5, this court in speaking of such rules said:

"In the construction of a statute the great object should be to discover the true intention of the legislature. The language of section 114 is precise and free from ambiguity; consequently no more can be necessary than to apply to the words their natural and ordinary sense."

In the recent case, In re Adoption of Alley, 234 Iowa 931, 933, 934, 14 N.W. 2d 742, 744, this court discussed the statute of Iowa with reference to adoption. The applicable part of Code section 10501.3, Code of 1939, provides:

"The consent of both parents shall be given to such adoption unless * * * the parents are not married to each other * * * or unless one or both of the parents have been deprived of the custody of the child by judicial procedure because of unfitness to be its guardian. If not married to each other, the parent having the care and providing for the wants of the child may give consent."

In the opinion this court said:

"As applied to [the facts of] this case, we find nothing of doubtful meaning in section 10501.3. It is only where a statute is ambiguous or of uncertain meaning that courts are at liberty to apply rules of construction. Where a statute is plain and the meaning clear, courts are not permitted to search for its meaning beyond its expressed terms. We are not permitted to write into the statute words which are not there." Citing Eysink v. Board of Supervisors, 229 Iowa 1240, 296 N.W. 376.

See also Iowa Public Service Co. v. Rhode, 230 Iowa 751, 298 N.W. 794; 51 Am. Jur., Taxation, section 524, page 526.

In the case of Palmer v. State Board of Assessment and Review, 226 Iowa 92, 94, 283 N.W. 415, 416, this court had before it a taxation statute. Involved were statutory provisions relating to net income and sales taxes of Iowa. The statutes were set forth. Following this the court said:

"But is this statute subject to construction? One of the canons for statutory interpretation is that a statute is not to be read as though open to construction as a matter of course. Statutory construction may be properly invoked only when the legislative acts contain such ambiguities or obscurities that reason-

able minds may disagree or be uncertain as to their meaning. Hahn v. Clayton County, 218 Iowa 543, 255 N.W. 695; Smith v. Sioux City Stock Yards Co., 219 Iowa 1142, 260 N.W. 531; Metropolitan Life Insurance Co. v. Reimer, 220 Iowa 1162, 263 N.W. 826. This rule is stated in 25 R. C. L., at pages 957, 958, as follows:

" 'Where the language of a statute is plain and unambiguous and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself. * * * In such a case arguments * * * are worse than futile. * * * This is an axiomatic principle; it is embodied in the maxim Expressum facit cessare tacitum (a thing expressed puts an end to implication).' "

See also 50 Am. Jur., Statutes, sections 223 to 226, inc.; Cosson v. Bradshaw, 160 Iowa 296, 141 N.W. 1062, Ann. Cas. 1915D 157. In the case of Long v. Northup, 225 Iowa 132, 140, 279 N.W. 104, 109, 116 A. L. R. 1475, the Iowa court in speaking of the construction of statutes said: "The intent of the legislature, in the absence of previous construction of its enactments, must be determined both from the language used and the purpose of the legislation."

Regarding the construction to be placed upon statutes this court, in the case of Green v. Brinegar, 228 Iowa 477, 479, 292 N.W. 229, 230, said: "In construing a statute this court has time and again said that the courts are required to interpret the language used by the legislature, fairly and sensibly in accordance with the plain meaning of the words used." See also Peverill v. Department of Agriculture, 216 Iowa 534, 535, 245 N.W. 334. In the case of Meredith Publishing Co. v. Iowa Employment Security Comm., 232 Iowa 666, 680, 6 N.W. 2d 6, 14, speaking of the well-defined canons of statutory construction, we quoted from the case of Jefferson County Farm Bureau v. Sherman, 208 Iowa 614, 226 N.W. 182, as follows: "It is also a well-recognized rule of construction that the legislative intention is to be deduced from the language used, and the language is to be construed according to its plain and ordinary meaning." See also Iowa Public Service Co. v. Rhode, supra.

We think that the language of this court in the case of Eysink v. Board of Supervisors, supra, is significant:

"It must be remembered that it is only where a statute is of doubtful or uncertain meaning that courts are at liberty to apply rules of construction. Where the language of a statute is plain and unambiguous and its meaning clear, courts are not permitted to search for its meaning beyond the expressed terms of the statute. This court has no power to write into the statute words which are not there. These rules are of course elementary, and do not require the citation of authorities." At page 1244 of 229 Iowa, page 378 of 296 N.W.

In considering the words "any regular election" the parties have devoted some consideration to the meaning of the term "any."

In the case of Winnebago County State Bank v. Hustel, 119 Iowa 115, 93 N.W. 70, the court had under consideration the word "any" when used in a note preceding the word "extension." The court held that the use of "any" before "extension" indi- cates that any one of an indefinite number was intended; that in the connection found the word is analogous to "every." Citing Dubuque County v. Dubuque & Pacific R. Co., supra. The words "any person" when so construed are distributive and include every person. Hanson v. Eichstaedt, 69 Wis. 538, 35 N.W. 30. The term "any" is frequently construed to mean "every." Heyler v. City of Watertown, 16 S.D. 25, 91 N.W. 334, citing Davidson v. Dallas, 8 Cal. 227, 239. "Any" used in the sense of "some"; "one out of many"; "an indefinite number." It is synonymous with "either" and is given the full force of "every" or "all." 1 Bouvier's Law Dictionary 205. See annotation 94 A.L.R. 1443, in the case of Tuten v. Bowden, 173 S.C. 256, 175 S.E. 510, as defining the term "any." See also 3 C.J. 232, wherein it was said: "* * * in its broad distributive sense, the sense in which the word is very frequently used, 'any' has the meaning of 'all' or 'every'."

Webster's New International Dictionary defines "any" to be "one indifferently out of a number; one (or, as pl., some) in- discriminately of whatever kind." The meaning of the word "any" was dealt with in the case of Commonwealth v. One 1939

Cadillac Sedan, 158 Pa. Super. 392, 396, 45 A. 2d 406, 409. There the court said: "A more comprehensive word than 'any' could hardly be employed. It means indiscriminate, or without limitation or restriction." See also Orme v. Atlas Gas & Oil Co., 217 Minn. 27, 13 N.W. 2d 757, 763.

As applied to the record facts in the instant case, the word "any" would apply to any and all regular elections held in this state.

III. As before stated, the question of including within the limits of any city or town any unplatted territory may be submitted to the voters of said municipality at any regular election. We have heretofore set out some of the legal definitions of the term "any." The term "regular" is a term of common understanding. Webster's New International Dictionary (Second Ed.) defines it as meaning "constituted", "selected", "conducted"; and "duly authorized or constituted." The term "election" is a term so well-known that a definition is unnecessary. However, generally speaking, it is the statutory method whereby qualified voters or electors pass upon various public matters submitted to them—the election of officers, national, state, county, township—the passing upon various other questions submitted for their determination. The statutes are quite specific as to the qualifications of voters and of the method of conducting such elections.

Elections are provided for by statutory enactment. They may be regular or special. In Iowa we hold biennial elections in November of each even-numbered year. In the early history of the state elections were held annually. This applied to those of the state and various of its subdivisions, including cities and towns. At such times there are elected certain state, county and township officers. In some of them the electors can vote for federal elective officials, such as senators and representatives.

There are also held biennially in cities and towns, municipal elections wherein certain officers—mayors, councilmen—are elected. See section 363.5, Code of 1946.

Either of such elections—the state or municipal—are properly considered regular elections.

Besides the regular elections above-mentioned, the statute provides for the calling of elections wherein certain various

public matters are submitted to the voters. These are generally designated as special elections. Vacancies in certain offices are sometimes filled at such elections, such as legislative vacancies. Various statutes make provision for the submission of various public matters at either regular or special elections. Among the various matters which the statute requires or authorizes to be submitted to the electors are those relating to municipal hospitals, docks, public waterworks, memorial halls, municipal bands, etc. We will below set forth the time, manner and method of submitting some of such matters to the electors.

The question of the erection of a memorial hall under section 37.3, Code of 1946, is to be submitted at "a regular election, or at a special election to be called if requested in the petition." Section 380.1 provides that trustees for municipal hospitals shall be elected at "a general, city, town, or special election." Under chapter 384, Code of 1946, cities and towns are authorized to provide for the establishment of docks, but the question is first to be submitted to the qualified electors of said city or town "at a regular election or a special election called for that purpose." (Section 384.1.) The question of the establishment of a municipal band is to be submitted to the voters at "the first following general municipal election." (Section 375.3, Code of 1946.)

On the question relating to the purchase, establishment, erection or maintenance of certain utilities, or the granting of franchises for the operation thereof, the council may submit such matters to a vote at a general or municipal election, or at a special one called for that purpose. (Chapter 397, section 397.6, Code of 1946.) On the question of the purchase and construction of waterworks in certain cities the contracts therefor must be approved by a majority of the city electors voting at a city or special election called for that purpose. (Chapter 398, section 398.7, Code of 1946.)

Where a city has acquired utilities, such as water, gas, and light, a board of trustees to manage same may be elected at a general or special election. (Section 397.29, Code of 1946.) The question of granting a franchise for motor bus is to be submitted to the electors at a general, city or town election. The same is true of interstate bridges. (Section 383.28, Code

of 1946.) Departments of publicity—the question to be submitted at any general, city or special election. On the question of a change of the name of a city or town the Code of 1897 (section 628) provided that the question should be submitted to the electors at the next annual election or at a special election. In chapter 362 (section 362.34, Code of 1946) it was provided that such question should be submitted to a vote of the qualified electors at the next regular city or town election or at a special election.

From the foregoing, and others which might be cited, it is quite apparent that the legislature did not set down any fixed rule or pattern as to the time elections were to be held for the submission of public questions or proposals to the qualified voters. Choice was given the municipality in some instances; in others, a definite or determinative date was fixed. It can hardly be questioned that the legislators had the right to designate and determine the time when various questions should be submitted to the electors. The various enactments as found in the past and present statutes are evidence of the fact that they exercised such right.

The city council of Bettendorf, Iowa, had the right to submit the question to the voters at "any regular election", and November 2, 1948, was the date of a regular election. We can take judicial notice of the fact that at many state and municipal elections there are submitted to the voters various public questions for their determination, in addition to the election of officers. It is a matter of common knowledge that there are usually more voters at general elections than at special elections. Consequently, there is an opportunity to obtain a wider expression of the desires of the electors. In the instant case on the annexation proposal there were cast 1837 votes with a negative vote of 170, a majority of approximately 91 per cent.

As tending to support the foregoing we call attention to the language of this court in the case of Hutchins v. City of Des Moines, 176 Iowa 189, 197, 157 N.W. 881, 884. Therein we used the following language: "Moreover, a proposition appropriate for a special election may be submitted at a general or city election, as was done in this and in the Coggeshall case." See Coggeshall v. City of Des Moines, 138 Iowa 730, 740, 117 N.W.

309, 312, 128 Am. St. Rep. 221, dealing with the matters of elections. We quote therefrom: "Until comparatively recent times, the word 'election,' when applied to political subjects, did not denote the choice of a principle, or the decision of a question of government, or the advice to governing bodies by the electors, and only when declared by the instrument itself to be sufficiently comprehensive to cover these matters has it been construed to have this extended meaning."

IV. The appellant has argued at length in support of its claim that in the compilation of the Code (1919) as set forth in the 1924 Code the legislature did not intend to change the time for holding elections where it was proposed to annex unplatted property to a municipality. Much of this goes to an analysis of the provisions of the prior Codes dealing with such subject.

■ When a legislative act is free and clear from ambiguity its legislative course or history has no effect upon such act. We think the legislative act as set forth in section 362.28, Code of 1946 meets the test. Preston A. Blair Co. v. Jensen, 49 Idaho 118, 286 P. 366; Barnes v. Philadelphia and Reading R. Co., 17 Wall. (U.S.) 294, 21 L. Ed. 544; Hamilton v. Rathbone, 175 U.S. 414, 20 S. Ct. 155, 44 L. Ed. 219.

When we examine the history of chapter 362, particularly what is now section 362.28 of the Code of 1946, we find in section 1043, Revision of 1860, dealing with the matter of the annexation of contiguous real estate, a provision that such question was to be submitted to the electors at the "regular annual election." In section 430, Code of 1873, the provisions as to the annexation of property to a municipality were required to be submitted to the electors of the municipality at the "regular" annual election. In section 610, Code of 1897, it was provided that the proposal to annex unplatted territory was required to be submitted to the electors at the annual election of the municipality. Various changes had been made in such Codes. It may be that some of these changes came about because of the fact that annual elections were dispensed with and that thereafter all elections were held biennially. See Amendment No. 1, Amendments of 1904 to the State Constitution. Under the Code of 1897 (sections 647, 648, 649) municipal elections were held biennially. At any rate, we find the legislature, as a revising and law-enacting

body, dealing with annexation proposals, and in various instances making statutory changes in the provisions. We have no right to question their authority to do so.

When the Code revision legislature (Fortieth and Fortieth Extra General Assemblies) met many changes were made in the various statutes then in force in Iowa. Various changes were made in the provisions of Title V, chapter 1, Code of 1897, relating to City and Town Government.

The provisions relating to annexation of unplatted real estate were set forth in a bill known as Senate File 153, Acts (Unpublished), Extra Session of Fortieth General Assembly. To show the extent and scope of said proposed bill we will set forth the title thereof as shown by the record of the enrolled bill now on file in the office of the secretary of state of Iowa. The title to said Senate File 153 is as follows:

"AN ACT to amend, revise, and codify sections three thousand four hundred seventy-one (3471) to three thousand four hundred seventy-three (3473) inclusive and three thousand five hundred nineteen (3519), also three thousand four hundred seventy-nine (3479) to three thousand four hundred eighty-one (3481) inclusive, three thousand four hundred eighty-four (3484), and three thousand four hundred eighty-six (3486) to three thousand four hundred ninety-seven (3497) inclusive, and three thousand five hundred four (3504) of the compiled Code of Iowa, relating to municipal corporations."

The legislative enactment relates to City and Town Government as set forth in Title XIII, Compiled Code of 1919. Section 8 of said Senate File 153 deals with the matter of the annexation of unplatted territory adjoining any city or town. Just preceding the provisions of said section 8 we find the following:

"That sections three thousand four hundred seventy-nine (3479), three thousand four hundred eighty (3480), three thousand four hundred eighty-four (3484) and three thousand four hundred eighty-six (3486) to three thousand four hundred ninety-six (3496) inclusive, of the compiled Code of Iowa are *amended, revised, and codified* to read as follows:" (Italics supplied.)

Immediately following we find set forth the provisions now contained in section 362.28. The language above used is rather significant and we think affords a full and complete answer to appellants' claim that no change was made or contemplated in the then existing law relating to the time of holding elections on a proposal to annex unplatted contiguous territory. In section 8 of Senate File 153 the various steps contemplated in such a proposed annexation are clearly and concisely set forth. Section 3479, Compiled Code of 1919, deals with such annexation. Various changes were made therein in Senate File 153 and in the face of such enactment it can hardly be said that the legislature had no intention of making such changes or of any desire to leave the statute as it remained before the enactment. The enactment plainly states that the bill "amends, revises, and codifies" parts of the existing law dealing with annexation proposals. We see no merit to appellants' claim that the bill was repealed by "implication." Senate File 153 was passed by the legislature, was signed by the Speaker of the House and the President of the Senate and was, on April 21, 1924, approved by Honorable N. E. Kendall, Governor of Iowa.

In conclusion we hold that the provisions of section 362.28 are clear, definite and unambiguous and further that therein the legislature, in the exercise of its unquestioned right, made changes in the former law; also that Senate File 153 was a positive declaration of the legislative intent. We hold that appellants' claim as set forth in the record is without merit and that the trial court did not err in its finding and decree.

So holding we find it unnecessary to discuss other questions presented and argued therein. The decree of the trial court was right and is affirmed.—Affirmed.

All JUSTICES concur.