# IN THE SUPREME COURT OF IOWA

No. 21–0999

Submitted October 13, 2022—Filed November 18, 2022
Amended November 18, 2022

**SAVE OUR STADIUMS, DANIEL PARDOCK, TAMARA ROOD, DANIEL TWELMEYER,** and **KATIE PILCHER,**

Appellants,

vs.

**DES MOINES INDEPENDENT COMMUNITY SCHOOL DISTRICT, KYRSTIN DELAGARDELLE, HEATHER ANDERSON, ROB BARRON, DWANA BRADLEY, TEREE CALDWELL-JOHNSON, KALYN CODY,** and **KELLI SOYER,**

Appellees.

---

Appeal from the Iowa District Court for Polk County, Jeffrey Farrell, Judge.

The plaintiffs appeal the district court's summary judgment dismissing claims challenging the defendant school district's refusal to grant their petition for a public referendum on funding for an athletic stadium. **AFFIRMED.**

Waterman, J., delivered the opinion of the court, in which all participating justices joined. Christensen, C.J., and Mansfield and May, JJ., took no part in the consideration or decision of the case.

Gary Dickey (argued) of Dickey, Campbell & Sahag Law Firm, PLC, Des Moines, for appellant.

Janice M. Thomas (argued), Lamson Dugan & Murray LLP, West Des Moines, Blake R. Hanson (until withdrawal), and Benjamin J. Kenkel (until

withdrawal) of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellees.

**WATERMAN, Justice.**

Citizens collected signatures for a petition to force a public referendum on the financing of a school district's proposed athletic stadium. The school board deemed the number of signatures insufficient to force a referendum, and the trial court agreed. The resulting appeal presents a question of statutory interpretation: how to determine the number of signatures needed to trigger the public referendum under Iowa Code section 423F.4(2)(*b*) (2020), which requires signatures totaling at least "thirty percent of the number of voters at the last preceding election of school officials under section 277.1." That election included both city and school officials on the ballot, and the parties disagree whether the "voters" to be counted include all those who voted at the election or rather only those who marked their ballot for the uncontested at-large school board seat. If the former, the petition fell short; if the latter, it met the signature requirement.

The school district told the plaintiffs in advance that all voters must be counted; the plaintiffs turned in their petition thirty minutes before the deadline with fewer signatures. The district determined the petition was facially invalid and declined to accept it or proceed with the referendum. The plaintiffs commenced this declaratory judgment action to force the referendum. The trial court agreed with the school district's interpretation and granted summary judgment denying relief. We retained the plaintiffs' appeal.

On our review, we determine that all voters at the election must be counted, and the plaintiffs' petition was facially invalid as lacking the requisite number of signatures. We conclude that the school district breached a directory

duty under Iowa Code section 277.7 to return the rejected petition, but the plaintiffs are required to show prejudice to obtain judicial relief for that technical violation, which they cannot do after they effectively ran out the clock with no time left to obtain more signatures. Their due process claims fail. We affirm the summary judgment.

## I. Background Facts and Proceedings.

The facts are largely undisputed. On November 13, 2019, the Des Moines Independent Community School District (the District) announced its plans to partner with Drake University to build an outdoor athletic stadium on Drake's campus. Drake would contribute $4.5 million, while the District would contribute $15 million in sales tax revenue under the Secure and Advanced Vision for Education (SAVE) program. On May 19, 2020, the District's board unanimously passed a resolution that approved the project. The resolution informed eligible voters they could challenge the appropriation of SAVE funds:

> Eligible electors of the school district have the right to file with the Board Secretary a petition pursuant to Iowa Code § 423F.4(2)(b), on or before close of business on June 2, 2020, for an election on the proposed use of SAVE Revenue. The petition must be signed by eligible electors equal in number to not less than one hundred or thirty percent of those voting at the last preceding election of school officials under Iowa Code § 277.1, whichever is greater.

A valid petition forces either rescission of the resolution or a public referendum on the resolution. To be valid, the petition must be filed within fifteen days of the resolution and include the number of signatures equal to 30% of "the number of voters at the last preceding election of school officials under section 277.1." *Id.* § 423F.4(2)(*b*).

The parties agree that the election on November 5, 2019, is the last preceding election of school officials. That election included voting for school board and city council positions. The contested races were for city council seats and district-based school board seats in which only a portion of the electorate could vote, while the only at-large school board position in which all eligible voters could vote was uncontested and drew fewer votes.

District residents organized Save Our Stadiums (SOS) to gather signatures for a petition seeking a referendum under section 423F.4(2)(*b*). Daniel Pardock, one of the individual plaintiffs in this action, contacted Thomas Ahart, the District's superintendent, on the morning of May 29, 2020, to ascertain the requirements for the petition. Pardock specifically asked how many signatures were needed. The superintendent replied that afternoon that 7,501 signatures were needed. The superintendent also noted that the petition should be submitted by the close of business—5:00 p.m.—on June 2 and that the District would make every effort to review the petition before its board meeting on July 7.

On June 2, the final day to submit a petition, SOS presented a petition to the school board secretary at 4:30 p.m. The petition contained 7,120 signatures—381 fewer than the minimum the superintendent had said were required. SOS, however, took the position that it only needed 30% of the votes cast in the uncontested at-large school board election. Under that theory, 5,353 signatures would trigger a public referendum.

Iowa Code section 277.7 sets forth the procedure to be followed by the school district when it receives a petition on a public measure:

1. A petition filed with the school board to request an election on a public measure shall be examined before it is accepted for filing. If the petition appears valid on its face it shall be accepted for filing. If it lacks the required number of signatures it shall be returned to the petitioners.

2. Petitions which have been accepted for filing are valid unless written objections are filed. Objections must be filed with the secretary of the school board within five working days after the petition was filed. The objection process in section 277.5 shall be followed for objections filed pursuant to this section.

District officials reviewed SOS's petition after June 2. They determined that the petition lacked the minimum number of signatures to trigger a public referendum under section 423F.4(2)(*b*). To reach that conclusion, the District looked to the total number of voters who turned out at the November 5, 2019 election (25,009). Signatures totaling 30% of that figure—7,502—were needed to trigger a referendum. Accordingly, the district did not accept the petition for filing. The district described the action taken as follows:

Upon receipt of Plaintiffs' Petition, Chief Financial Officer Shashank Aurora performed a facial review of the Petition, simply seeking to ascertain the total number of signatures it contained. The initial count showed Petitioners fell well below the required number under Iowa law, making it facially invalid and insufficient to force a referendum on the resolution, thus [the Board] never accepted it for filing.

The District took no further action after it determined that the petition's 7,120 signatures were insufficient to trigger a referendum. The District did not return the petition to SOS, notwithstanding the directive to do so in Iowa Code section 277.7(1).

The individual plaintiffs and SOS (collectively SOS) commenced this declaratory judgment seeking an adjudication that their petition included

enough signatures to trigger a public referendum, that the District failed to abide by the procedural requirements of section 277.7, and that the District violated their due process rights. SOS sought a writ of mandamus and injunction to force the public referendum. The parties filed cross-motions for summary judgment. The district court granted the District's motion and denied SOS's motion. The court ruled that "[t]he District correctly refused to accept the petition because the number of signatures did not reach the amount needed to trigger a special election." The court found the district technically violated section 277.7(1) by failing to return the petition to SOS but determined no relief was warranted because SOS could not show any resulting prejudice given the lack of time remaining to obtain enough additional signatures. The court ruled as a matter of law the due process claim failed because SOS could not show the district's conduct shocked the conscience. SOS appealed, and we retained the appeal.

**II. Standard of Review.**

We review a district court's grant of summary judgment for correction of errors at law. *Young v. Iowa City Cmty. Sch. Dist.*, 934 N.W.2d 595, 601 (Iowa 2019). We review constitutional issues de novo. *Id.* We review rulings on statutory interpretation for correction of errors at law. *EMC Ins. Grp. v. Shepard*, 960 N.W.2d 661, 668 (Iowa 2021).

**III. Analysis.**

SOS raises three issues in this appeal: (1) whether the district court erred in determining the number of signatures required to trigger the referendum, (2) whether the district court erred by denying relief based on the school district's

failure to return the petition to SOS, and (3) whether the district court erred in rejecting SOS's constitutional due process claim. In our view, the case turns on the resolution of the principal fighting issue: how to determine "the number of voters at the last preceding election of school officials." Iowa Code § 423F.4(2)(*b*). We address that issue first.

**A. Whether the District Court Correctly Calculated the Number of Signatures Required Under Iowa Code § 423F.4(2)(*b*).** Voters elect school officials in a hybrid election that also includes voting for city council positions. Beginning with the election on November 5, 2019—the election that the parties agree is "the last preceding election of school officials"—voters could in the same election cast votes for city council members as well as school board members. The parties disagree about who the "*voters at* the last preceding election of school officials" includes—anyone who voted in the election or rather only those who voted for a school official, or specifically, those who voted in the uncontested race for the at-large school board seat.

Undervoting causes vote totals to differ across the individual races in the same hybrid election. At every election, some voters cast votes in certain races or ballot measures but leave others blank.[1] A survey of the vote tallies at the November 5, 2019 election illustrates the phenomenon. Only 17,843 votes were cast in the race for the at-large school board seat, but a total of 25,009 voters

[1]David Axelrod & Mike Murphy, *More than 30 Percent of Voters Fail to Complete Their Ballots. Don't Be One of Them*, Vox (Nov. 7, 2016, 2:40 PM), https://www.vox.com/the-big-idea/2016/11/7/13553496/down-ballot-vote-local-elections-informed-voter [https://perma.cc/TH2N-QZV3].

cast votes at the election.[2] Which number represents the total number of voters at the last preceding election of school officials? SOS urges the former; the District the latter.

The parties agree that there is a universe of total votes or voters that is to be multiplied by 30% to determine the statutory threshold to trigger a rescission or public referendum of the spending plan. *Id.* SOS argues we should use the number of votes cast in the at-large school board election (17,843), requiring only 5,353 signatures for a valid petition. The District argues the district court correctly used the total number of voters at the election (25,009), requiring 7,502 signatures, and correctly ruled that the petition submitted with fewer signatures was invalid on its face.

We begin our analysis with the text of the statute. *Borst Bros. Constr. v. Fin. of Am. Com., LLC*, 975 N.W.2d 690, 699 (Iowa 2022). We interpret statutes as a whole. *State v. Iowa Dist. Ct.*, 889 N.W.2d 467, 473 (Iowa 2017). Section 423F.4(2)(*b*) provides:

> For bonds subject to the requirements of paragraph "a", if at any time prior to the fifteenth day following the hearing, the secretary of the board of directors receives a petition containing the required number of signatures and asking that the question of the issuance of such bonds be submitted to the voters of the school district, the board shall either rescind its adoption of the resolution or direct the county commissioner of elections to submit the question to the registered voters of the school district at an election held on a date specified in section 39.2, subsection 4, paragraph "c". *The petition must be signed by eligible electors equal in number to not less than one hundred or thirty percent of the number of voters at the last preceding election of school officials under section 277.1, whichever is greater.* If the board submits the question at an election and a

---

[2]This gives an undervoting rate of 28.7%.

> majority of those voting on the question favors issuance of the bonds, the board shall be authorized to issue the bonds.

Iowa Code § 423F.4(2)(*b*) (emphasis added). We read related statutes together. *Kolzow v. State*, 813 N.W.2d 731, 736 (Iowa 2012). Because it is referenced expressly, we also consider section 277.1:

> The regular election shall be held biennially on the first Tuesday after the first Monday in November of each odd-numbered year in each school district for the election of officers of the district and merged area and for the purpose of submitting to the voters any matter authorized by law.

Iowa Code § 277.1.

Reading these statutes together, there was never a time when the statutory minimum number of signatures required by section 423F.4(2)(*b*) would have been calculated at a stand-alone election of school officials. Elections had been combined by the legislature in 2017, effective July 1, 2019. 2017 Iowa Acts ch. 155, §§ 8–9 (codified at Iowa Code § 277.1 (2020)). In 2019, the legislature enacted the 30% requirement, also effective July 1, 2019. 2019 Iowa Acts ch. 166, § 17 (codified at Iowa Code § 423F.4(2)(*b*) (2020)). So, when the legislature enacted the 30% requirement, the elections had already been combined and the legislature understood which voters it was using as its base—voters at the combined election. *See Simon Seeding & Sod, Inc. v. Dubuque Hum. Rts. Comm'n*, 895 N.W.2d 446, 467 (Iowa, 2017) ("We assume 'when a legislature enacts statutes it is aware of the state of the law.'" (quoting *Rhoades v. State*, 880 N.W.2d 431, 446 (Iowa 2016))). Iowa Code section 49.41, allowing the same person to seek both a school and a municipal office "at the same election," also became effective on July 1, 2019. 2017 Iowa Acts ch. 155, §§ 23, 44 (codified at

Iowa Code Sec. 49.41(1)(*a*) (2020)). The legislature thereby ensured that the voters at the election of school officials could simultaneously vote for city officials at the same election.

SOS argues we should interpret these statutes liberally in favor of the right to vote in a public referendum. SOS relies on *Devine v. Wonderlich* for this proposition, a case that did not involve a public referendum. 268 N.W.2d 620 (Iowa 1978) (en banc). In *Devine*, we emphasized that, due to the fundamental nature of the right to vote in elections for public office, statutes must be construed liberally in favor of voters. *Id.* at 623. But more recently we have declined to apply a liberal construction to public referendum statutes. *Young*, 934 N.W.2d at 605 (holding school district was not required to hold referendum on demolition of elementary school building). We distinguished *Devine* by contrasting referenda cases:

> We do not in any way retreat from *Devine*. But the context of this case before us is different. Here, we are not dealing with regulation of the voting process in an election of our governmental representatives. Instead, we are trying to divine the boundary between the power our legislature has allocated to the voters on the one hand and school boards on the other.

> While democratic values may be promoted in referenda, the school board is comprised of democratically elected officials empowered to conduct the school district's business through the deliberative process. Both the actions of the voters through the referendum process and decisions of elected officials in a deliberative setting have been established by the legislature and are entitled to respect. We are not inclined to expansively read the power of the voters at the expense of the deliberative processes of the elected school board through a rule of construction. *We think a straight up interpretation of the applicable statutes is a better approach than one that puts a thumb on the scale in favor of the voters acting through referenda. After all, the voters have elected the school board members too.*

*Id.* (emphasis added). We give effect to the referendum process just as the legislature has specified by statute. Oliver Wendell Holmes, *The Theory of Legal Interpretation*, 12 Harv. L. Rev. 417, 419 (1899) ("We do not inquire what the legislature meant; we ask only what the statute means."). For these reasons, we decline to give section 423F.4(2)(*b*) a liberal construction. Rather, in construing this statute, we give its words their ordinary meaning. *Com. Bank v. McGowen*, 956 N.W.2d 128, 133 (Iowa 2021).

As noted, the election at issue included both city officials and school officials on the ballot. Section 423F.4(2)(*b*) requires counting "voters" (people), not the votes cast in a particular race. *See* Iowa Code § 423F.4(2)(*b*). A "voter" is a person—one "who engages in the act of voting." *Voter, Black's Law Dictionary* (11th ed. 2019). It follows that the plural "voters" would be the people who engage in the act of voting at the election.

Section 423F.4(2)(*b*) requires a count of the "voters *at*" the election. Iowa Code § 423F.4(2)(*b*) (emphasis added). Idiomatically, it is telling that "voters" is paired with the preposition "at" before "the last preceding election of school officials." *Id.* This conveys a spatial meaning where we consider the people (voters) at a particular place (the election of school officials).[3] The election at issue here included multiple races for city council seats and school board positions. *See Iowa–Ill. Gas & Elec. Co. v. City of Bettendorf*, 41 N.W.2d 1, 5 (Iowa

---

[3]We are mindful of the bizarre consequences that can result when judges break phrases down into their components, analyze each component, and then synthesize the whole. *See Bostock v. Clayton County*, 140 S. Ct. 1731, 1755–56 (2020) (Alito, J., dissenting). But holding to the original public meaning of the words of the statute at the time it was enacted ensures that we will not fall into the same trap.

1950) ("[An election] is the statutory method whereby qualified voters or electors pass upon various public matters submitted to them—the election of officers, national, state, county, township—the passing upon various other questions submitted for their determination."). A voter who is present at the election of city officials is also present at the election of school officials, and vice versa. Indeed, a candidate may seek both a municipal office and a school office "at the same election." Iowa Code § 49.41. We agree with the district court and the school district that the total number of *voters at* the election is to be counted, not the votes cast in the at-large school board race.[4]

Section 423F.4(2)(*b*) does not say "thirty percent of the number of *votes in* the last preceding election of school officials." That choice of words would better support SOS's interpretation. Instead, the language enacted requires a count of "voters at" that election, which includes those casting votes for city officials.

Our holding avoids the textual and practical problems inherent in SOS's interpretation that counts only the votes cast for the uncontested at-large seat. The election of school officials—officials plural—involves more than the election of one at-large board member. The Des Moines School Board is comprised of seven members: four elected from geographically divided districts and three

---

[4]We acknowledge that absentee voting is a popular mode of voting. Iowa voters cast more absentee ballots than traditional ballots in the general election of November 3, 2020. Press Release, Off. of the Iowa Sec'y of State, MEDIA RELEASE: Iowa Shatters General Election Turnout Record (Nov. 4, 2020), https://sos.iowa.gov/news/2020_11_04.html [https://perma.cc/U4KJ-5DEC]. But voters who choose to cast an absentee ballot do not affect our construction of section 423F.4(2)(*b*). Absentee voters are still "at" the election because they "pass upon various public matters submitted to them." *Iowa–Ill. Gas & Elec. Co.*, 41 N.W.2d at 5. There is no single, magical location where a voter must appear to be included in the count under section 423F.4(2)(*b*). In the modern age, the precinct-by-precinct polling place, the county courthouse, and the kitchen table are all places to mark the ballot.

at-large members.[5] A voter who casts a vote in the election for a district member but fails to cast a vote in the at-large election qualifies as a voter at the election of school officials. But due to undervoting, that voter at the election of school officials would go uncounted in SOS's preferred method of interpreting section 423F.4(2)(*b*).

This is more than an academic concern. The at-large school board election on November 5, 2019, was uncontested, and as the district court observed, the uncontested races saw far more undervotes compared to the contested races. Indeed, the two uncontested district races had totals of 2,914 and 3,313 votes while the contested district race had a total of 8,450 votes. It is reasonable to conclude that voters undervoted in the uncontested at-large election. Given the phenomenon of undervoting, the legislature reasonably chose to count voters *at the election* instead of votes cast for specific races.

And although SOS refers to "*the* at-large school board director's race," this framing hides the ball. (Emphasis added.) Given the current composition of the District's board, the 2025 election of school officials will feature *two* at-large elections.[6] Under SOS's theory that section 423F.4(2)(*b*) looks to the number of votes cast in the at-large election, *which* at-large election's vote total would

---

[5]*School Board Elections*, Des Moines Pub. Schs., https://www.dmschools.org/board/elections/ [https://perma.cc/6U38-4CVE] (last visited Nov. 10, 2022).

[6]Two of the three at-large board members' terms of office expire in 2025. *Maria Alonzo-Diaz*, Des Moines Pub. Schs., https://www.dmschools.org/board/school-board-members/maria-alonzo-diaz/ [https://perma.cc/E4TT-S2DR] (last visited Nov. 10, 2022); *Jackie Norris*, Des Moines Pub. Schs., https://www.dmschools.org/board/school-board-members/jackie-norris/ [https://perma.cc/5GAH-C5TQ] (last visited Nov. 10, 2022).

determine the number of signatures needed for a valid petition after the 2025 election becomes "the last preceding election of school officials"? Iowa Code § 423F.4(2)(*b*). The phenomenon of undervoting indicates that the answer to that question could matter—especially if one of the races is contested and the other uncontested. "Generally, we try to interpret statutes so they are reasonable and workable." *Iowa Dist. Ct.*, 889 N.W.2d at 473. SOS's interpretation is neither.

There are other practical problems with attempting to separate the number of voters in the school board races. It is too late to perform a manual recount of the ballots cast by all 25,009 voters at the November 5, 2019 election. *See* Iowa Code § 50.13(1) (providing for the destruction of ballots six months after election). SOS proposes using the "tally books" to determine the number of voters who voted in the city election only and thus should be excluded from the total number of voters. The tally books, however, show only vote totals; they contain no ballot-by-ballot breakdown of how many voters voted for both city and school races, only for school races, and only for city races, allowing the last group to be excluded from the total number of voters at the last election of school officials. This further demonstrates the better approach is to count all voters at the November 5, 2019 election.

For these reasons, we hold the district court correctly affirmed the District's determination that the petition lacked sufficient signatures and was facially invalid.

**B. Whether the District Court Correctly Denied Relief for the District's Technical Violation of Section 277.7.** The district court ruled that

the school district violated Iowa Code section 277.7(1) by failing to return the petition to SOS, but denied relief because SOS failed to show any resulting prejudice. We agree with the district court's resolution.

As we just explained above, the District correctly determined that SOS's petition was facially invalid because it lacked the requisite number of signatures to trigger a public referendum. Accordingly, the District could not accept the petition for filing or move forward with a public referendum. Yet SOS demands relief (including a public referendum) simply because the District failed to return the petition to SOS. *See id.* ("A petition filed with the school board to request an election on a public measure shall be examined before it is accepted for filing. . . . If it lacks the required number of signatures it shall be returned to the petitioners."). The question is whether this statutory violation entitles SOS to relief. We think not, given the undisputed facts.

SOS agrees that the District could take a reasonable time to examine and return the petition. It is undisputed that SOS submitted its petition on June 2, 2020, the last day, thirty minutes before the District's 5:00 p.m. deadline. SOS does not claim the District was required to review and return the petition that same day. But even if the District had immediately returned the petition, SOS cannot show it would or could have gathered the remaining signatures required by 5:00 p.m., or even by midnight. For that reason, the district court correctly found SOS was not prejudiced by the District's failure to return the petition. By running out the clock, SOS put itself in this bind. Even the District's immediate return of the petition would have made no difference.

Section 277.7(1) imposed a duty on the District to return SOS's petition. *Id.* ("If [the petition] lacks the required number of signatures it *shall* be returned to the petitioners." (emphasis added)); *see id.* § 4.1(30)(*a*) ("The word 'shall' imposes a duty."). Duties can be either mandatory or directory. *See In re Det. of Fowler*, 784 N.W.2d 184, 190 (Iowa 2010). We have described directory duties as follows:

> [T]he general rule [is] that statutory provisions fixing the time, form and mode of proceeding of public functionaries are directory because they are not of the essence of the thing to be done but are designed to secure system, uniformity and dispatch in public business. Such statutes direct the thing to be done at a particular time but do not prohibit it from being done later when the rights of interested persons are not injuriously affected by the delay.

*Taylor v. Dep't of Transp.*, 260 N.W.2d 521, 523 (Iowa 1977). That is what we have here. Section 277.7(1) fixes "the time, form and mode of proceeding of public functionaries." *Id.* Simply put, it tells whom to do what and when: the board is to return the petition after it has determined that the petition lacks sufficient signatures. Section 277.7(1) prescribes a directory duty. By contrast, the mandatory duty—to provide a public referendum in response to a *valid* petition—is found in section 423F.4(2)(*b*).

The difference between a directory and mandatory duty determines the remedies available:

> "The difference between [mandatory and directory duties] lies in the consequence for failure to perform the duty." A mandatory duty "is essential to the main objective of the statute . . . and a violation will invalidate subsequent proceedings under it." If a duty is directory, a failure to perform the duty will not invalidate subsequent proceedings unless the individual has suffered prejudice as a result of the violation.

*In re Det. of Fowler*, 784 N.W.2d at 190 (omission in original) (citations omitted) (quoting *Taylor*, 260 N.W.2d at 522–23). Because the duty in question is directory, SOS must demonstrate that it was prejudiced by the District's failure to return the petition. *Id.*

SOS cannot demonstrate that it has suffered prejudice. SOS lacked time to collect additional signatures to validate its petition; its rights were not affected by the District's failure to return the petition. Even if the District had returned the petition immediately, thirty minutes was not enough time to collect another 381 signatures. And SOS cannot claim that it was prejudiced by being misled or misinformed—SOS knew the District would require more signatures based on the superintendent's May 29 email.

Alternatively, SOS argues that the District's failure to return the petition constituted its "acceptance" of the petition for filing. SOS contends this de facto acceptance of the petition makes it per se valid. *Id.* § 277.7(2) ("Petitions which have been accepted for filing are valid unless written objections are filed."). Under this theory, SOS argues that the District either should have filed written objections to the petition or gone ahead and referred the matter for a public referendum. Because the District did not file written objections challenging the validity of the petition, SOS argues that the District accepted the petition as a matter of law, the petition is valid, and the matter must go to a public referendum. We disagree. The District never accepted the petition for filing by its action or inaction. It examined the petition and found the number of signatures

insufficient. It would have violated the statute to accept a deficient petition for filing.

SOS advances no authority for the proposition that we should validate a facially invalid petition after the submission deadline expired simply because the District failed to return it. SOS proposes a false choice between returning the petition and accepting it for filing. In this case, the District properly declined to accept SOS's petition that lacked sufficient signatures. Because the deadline expired the same day SOS submitted the petition with inadequate time to cure the deficiency, any obligation to return the petition was moot. *See Maghee v. State*, 773 N.W.2d 228, 233 (Iowa 2009) (defining mootness as "when the contested issue has become academic or nonexistent and the court's opinion would be of no force or effect in the underlying controversy"). SOS is entitled to no relief in the absence of prejudice.

**C. Whether the District Court Correctly Rejected SOS's Due Process Claim.** Finally, SOS argues that a denial of the right to vote on the expenditure of the SAVE funds amounts to a denial of its individual residents' due process rights. But because SOS fell short of the number of signatures required to trigger a public referendum, it triggered no right to challenge the District's use of the SAVE funds at a public referendum. Referendum cases are not "right to vote" cases:

> The right to vote in a general election, *i.e.*, the right to participate in *representative* government, is a fundamental constitutional right that may not be abridged absent a compelling state interest. A referendum, however, is a form of direct democracy. Our constitution insures a representative form of government, not a direct democracy. Where a statute provides for an expression of

> direct democracy, such as by initiative or referendum, it does so as a matter of legislative grace; the right to participate in such a process is not fundamental to our Constitution.

*Bowers v. Polk Cnty. Bd. of Supervisors*, 638 N.W.2d 682, 692 (Iowa 2002) (quoting *Kelly v. Macon–Bibb Cnty. Bd. of Elections*, 608 F. Supp. 1036, 1038 n.1 (D. Ga. 1985)); *see also John Doe #1 v. Reed*, 561 U.S. 186, 212 (2010) (Sotomayor, J., concurring) ("[Initiatives and referenda] are not compelled by the Federal Constitution. It is instead up to the people of each State . . . to decide whether and how to permit legislation by popular action. States enjoy 'considerable leeway' . . . to specify the requirements for obtaining ballot access . . . ."); *Eggers v. Evnen*, 48 F.4th 561, 565 (8th Cir. 2022) (collecting cases and noting "we have repeatedly stated that the right to place initiatives on the state ballot 'is not a right guaranteed by the United States Constitution, but is a right created by state law.' ").

We see no "wholesale deprivation of the right to vote," as SOS claims, because SOS itself failed to submit a valid petition to trigger a statutory right to a public referendum. The failure of SOS's statutory claim to a public referendum is fatal to its due process claim, which presupposes the deprivation of a right to the referendum.

We also agree with the district court that SOS cannot show that the District's conduct "shocks the conscience" as required to recover under a substantive due process theory. *Lennette v. State*, 975 N.W.2d 380, 393–94 (Iowa 2022) ("A substantive due process violation is not easy to prove. The claim 'is reserved for the most egregious governmental abuses against liberty or property

rights, abuses that "shock the conscience or otherwise . . . offend judicial notions of fairness . . . [and that are] offensive to human dignity." ' " (alteration and omissions in original) (citation omitted) (quoting *Blumenthal Inv. Trs. v. City of West Des Moines*, 636 N.W.2d 255, 265 (Iowa 2001))). It hardly shocks the conscience to decline to act on a facially invalid petition for a public referendum. We affirm the district court's summary judgment dismissing the due process claims.

**IV. Disposition.**

For the foregoing reasons, we affirm the district court's summary judgment dismissing SOS's claims.

**AFFIRMED.**

All justices concur except Christensen, C.J., and Mansfield and May, JJ., who take no part.