# IN THE COURT OF APPEALS OF IOWA

No. 22-1804
Filed February 7, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**GUSTAVO HUERTA,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi Ackley, Judge.

        Gustavo Huerta appeals his convictions and sentences after a jury found him guilty of sexual exploitation of a minor and enticing a minor. **AFFIRMED.**

        Martha J. Lucey, State Appellate Defender, and Ella M. Newell, Assistant Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee.

        Considered by Tabor, P.J., and Badding and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Gustavo Huerta appeals his convictions and sentences after a jury found him guilty of sexual exploitation of a minor and enticing a minor. Huerta challenges the sufficiency of the evidence supporting his convictions and contends the district court abused its sentencing discretion. Because substantial evidence supports the jury's verdicts and the court exercised its discretion in imposing consecutive sentences, we affirm.

**I. Background Facts and Proceedings.**

In early December 2020, K.F. discovered Huerta leaving her home and her thirteen-year-old daughter, C.R., naked in the basement. K.F. searched C.R.'s phone and found messages C.R. exchanged with Huerta on Facebook Messenger. Among the messages are eight photos that C.R. sent Huerta of herself. In four of the photos, C.R. is only partially clothed.

The State charged Huerta with sexual exploitation of a minor and enticing a minor. After the trial, a jury found Huerta guilty of both charges. The court sentenced Huerta to serve ten years in prison for sexual exploitation of a minor and five years in prison for enticing a minor. It ordered that the sentences run consecutively.

**II. Sufficiency of the Evidence.**

Huerta challenges the sufficiency of the evidence supporting both of his convictions. We review claims of insufficient evidence for correction of errors at law. *State v. Cook*, 996 N.W.2d 703, 708 (Iowa 2023). We affirm the jury's verdicts if supported by substantial evidence. *Id.* Substantial evidence is evidence that is "sufficient to convince a rational trier of fact the defendant is guilty beyond a

reasonable doubt." *Id.* (citation omitted).  We view the evidence and all legitimate inferences and presumptions it supports it in the light most favorable to the State. *Id.*

**A. Enticing a minor.**

The trial court instructed the jury that Huerta was guilty of enticing a minor if the State proved:

> 1. On or about December 1, 2020, the Defendant attempted to entice C.R.
> 2. The Defendant did so with the specific intent to commit sexual abuse and/or sexual exploitation upon C.R.
> 3. The Defendant committed an overt act evidencing his purpose to entice C.R.
> 4. At the time that Defendant attempted to entice C.R., she was under the age of sixteen.

The main evidence the State produced against Huerta are the messages he exchanged with various Facebook accounts in December 2020.  Huerta does not deny that he participated in those exchanges or that C.R. was a minor when they occurred.  Instead, he contends the State failed to prove that he was communicating with C.R.  Huerta notes that multiple people may have access to a Facebook account by phone or computer.  He cites a message from an account alleged to belong to C.R. that stated her brother used her phone on at least one occasion.  He also cites two message exchanges from someone claiming to be C.R. on an account that belonged to her sister.  C.R. was hospitalized after her mother found Huerta leaving the home, so law enforcement did not interview C.R.

to confirm she sent the messages. C.R. remained hospitalized at the time of trial and was unavailable to testify that she sent the messages.[1]

Substantial evidence supports the finding that Huerta was exchanging messages with C.R. At the start of their conversation, C.R. and Huerta discussed how they met. They exchanged photos a brief time later. K.F. testified that the Facebook account Huerta exchanged messages with belonged to C.R. and that she recognized C.R.'s profile picture. K.F. also identified C.R. in photos sent to Huerta from that account and recognized the background of some photos as places inside her home. After K.F. caught Huerta leaving her home, C.R. sent Huerta a message stating that she was "going back to detention then pemic."[2] Thirty-five minutes later, she sent Huerta a photo showing her wrist secured by a restraint. Circumstantial evidence supports the finding that Huerta was corresponding with C.R. *See, e.g.*, *State v. Weisbeck*, No. 22-1068, 2023 WL 6620330, at *3–5 (Iowa Ct. App. Oct. 11, 2023) (finding substantial evidence supported the defendant's conviction because circumstantial evidence would convince a jury that the defendant authored email messages that proved a key element of the crime); *State v. Goodwin*, No. 18-1822, 2020 WL 1551149, at *4 (Iowa Ct. App. Apr. 1, 2020) (discussing authentication of electronic messages, which "is satisfied if sufficient proof has been introduced so that a reasonable juror

---

[1] Huerta also argues that it was unlikely that C.R. authored any of the messages sent after her hospitalization, but the messages that support Huerta's convictions were sent before C.R.'s hospitalization.

[2] We infer that "pemic" is a phonetic spelling of PMIC, the acronym used for a psychiatric medical institution for children.

could find in favor of authenticity or identification" (quoting *United State v. Vayner*, 769 F.3d 125, 129–30 (2nd Cir. 2014))).

Sufficient evidence supports Huerta's conviction on one count of enticing a minor.

### B. Sexual exploitation of a minor.

The trial court instructed the jury that Huerta was guilty of sexual exploitation of a minor if the State proved:

> 1. On or about December 1, 2020, the Defendant caused or attempted to cause a person under the age of eighteen to engage in the display of nudity for the purpose of arousing or satisfying the sexual desires of a person who may view a visual depiction of the display of nudity;
> 2. Defendant intended that the display of nudity would be photographed, filmed, or preserved in a visual medium.

Huerta contends there is insufficient evidence showing that he received photos depicting a minor and that the photos depict a display of nudity under Iowa Code section 728.12(1) (2020).

Substantial evidence supports the finding that the photos depicted C.R. We have already found substantial evidence that Huerta communicated with C.R. on her Facebook account and that C.R. sent Huerta the photos from that account. Although C.R.'s face is visible in only two of the photos, they all appear to depict the same individual. K.F. identified C.R. as the person depicted in some photos, including one in which her face was not visible.[3]

Substantial evidence also supports a finding that the photos depict a display of nudity. C.R. lifts her shirt in some photos and pulls her pants down in one.

---

[3] An emoji covers subject's face, but K.F. recognized items in the background photo and identified C.R. by a distinctive scar on her leg.

Because C.R. positions her hands to cover her nipples and her underwear covers her genitalia, the photos do not depict complete nudity. But our supreme court has held that "[t]he common meaning of 'nudity' does not require total nakedness."[4] *State v. Hunter*, 550 N.W.2d 460, 465 (Iowa 1996), *overruled on other grounds by State v. Robinson*, 618 N.W.2d 306, 312 (Iowa 2000). Along with exposing parts of her bare breasts and buttocks, C.R. posed in suggestive ways that would arouse or satisfy the sexual desires of the viewer. *See id.* at 465–66 (finding the defendant's act of photographing a minor partially clothed and in provocative poses is conduct that "falls squarely within the statute's target of 'nudity of a minor'").

The jury could also find Huerta guilty of sexual exploitation of a minor if Huerta tried to cause C.R. to engage in a display of nudity. Substantial evidence supports Huerta's conviction under this theory too. After receiving the photos from C.R., Huerta told her that he wanted more. He explicitly described what parts of her body he wanted to see, which included her genitalia. The act of soliciting additional photos, on its own, supports the jury's finding of guilt.

Finally, Huerta challenges his sexual-exploitation-of-a-minor conviction because the verdict did not specify which theory the jury relied on. Iowa Code section 814.28 prohibits us from setting aside or reversing a general verdict of guilt if sufficient evidence supports a finding of guilt under at least one theory. Huerta challenges the constitutionality of the statute, alleging that section 814.28 is facially unconstitutional and unconstitutional as applied to him. Because sufficient

---

[4] Although Huerta argues that the definition of nudity used in *Hunter* is outdated because societal standards have changed, we do not have the power to overrule supreme court precedent. *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014).

evidence supports the jury's verdict under both theories, we do not reach the merits of this claim. *See, e.g.*, *State v. W. Vangen*, 975 N.W.2d 344, 347 (Iowa 2022).

**III. Sentence.**

Finally, Huerta challenges his sentences, claiming the district court imposed consecutive sentences in accordance with a fixed sentencing scheme. Although we review sentences for correction of errors at law, we reverse only if the district court abused its sentencing discretion or there was a defect in the sentencing procedure. *State v. Damme*, 944 N.W.2d 98, 103 (Iowa 2020). The district court abuses its discretion by "exercise[ing] its discretion on grounds or for reasons that were clearly untenable or unreasonable." *State v. Gordon*, 921 N.W.2d 19, 24 (Iowa 2018) (citation omitted). We will find the sentencing court abused its discretion if it

> fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only appropriate factors but nevertheless commits a clear error of judgment by arriving at a sentence that lies outside the limited range of choice dictated by the facts of the case.

*State v. Majors*, 940 N.W.2d 372, 385 (Iowa 2020) (citation omitted).

The sentencing court must consider the sentences authorized by law and select the one that "will provide maximum opportunity for the rehabilitation of the defendant, and for the protection of the community from further offenses by the defendant and others." Iowa Code § 901.5. In doing so, the court considers "any relevant factors, including the nature and circumstances of the offense as well as the defendant's age, character, chances for reform, criminal record, employment

history, and family circumstances." *State v. Phillips*, 996 N.W.2d 419, 421 (Iowa Ct. App. 2023).

Huerta claims the district court failed to exercise its sentencing discretion by sentencing him in accordance with a fixed sentencing policy for offenses of the nature he committed. *See State v. Jackson*, 204 N.W.2d 915, 916 (Iowa 1973) (stating that imposing sentence based on a predetermined fixed sentencing policy "is the exact antithesis of discretion" (citation omitted)). Because "the punishment must fit the particular person and circumstances under consideration[,] each [sentencing] decision must be made on an individual basis, and no single factor, including the nature of the offense, will be solely determinative." *State v. McKeever*, 276 N.W.2d 385, 387 (Iowa 1979).

At the start of sentencing, the district court noted that Huerta was eligible for a deferred judgment but that Huerta's score on one risk assessment for male sex offenders indicates he has an above-average risk of reoffending. It also noted the presentence investigation report recommended concurrent sentences based on the nature of Huerta's offenses. The court then allowed the prosecutor and defense attorney to make sentencing recommendations.

The prosecutor cited the nature of Huerta's offenses and his risk of recidivism. After noting that Huerta did not show remorse or take accountability for his actions, the prosecutor recommended that the court impose consecutive sentences:

> I will say that given the Defendant's lack of responsibility taken for these offenses, it's not clear that he's not—he's not going to be on any sort of track for rehabilitation unless he can say that he did something wrong. You can't rehabilitate somebody who can't even acknowledge that, rehabilitate somebody who doesn't even realize

that, so I think in light of that, he needs to be imposed consecutive sentences. You know, I would be satisfied with concurrent sentences if the Defendant would stand up in court today and take responsibility for what he did, take responsibility for the harm he caused to the victim and family, and that would suggest to me that there was a possible path for rehabilitation, and concurrent sentences would be appropriate, but otherwise, I think consecutive sentences are clearly . . . the way to go here when we have somebody who's not even—not demonstrated any remorse for or taken any steps on any sort of path towards rehabilitation.

Defense counsel noted that Huerta "has a strong family network that is very supportive of him" and asked the court to grant Huerta deferred judgment. Huerta then addressed the court in a long statement, portraying himself as a victim. Huerta claimed that he did not "purposely put [him]self in the situation" before admitting, "[I]t was my Facebook. I did say those words, and it was me, it was my pictures." Then he claimed he "was cat-fished" and believed C.R. was an adult, which contradicts his statement to police that he believed C.R. was fifteen years old. Rather than admitting that his actions hurt C.R., Huerta focused on how his convictions would hurt him because "if I get the sex offender registry for the rest of my life, it's never going to be the same. My life is never going to be the same, Your Honor. I don't want to be known as a sex offender throughout my whole family." Then he proceeded to justify and downplay his actions:

> I do flirt with girls on Facebook, and it's normal, it's normal for me, but . . . if the allegations of the person being a thirteen-year-old talking to me on Facebook, I responded, yes. . . . [I]t's normal for me to speak to women. It's normal for me to talk to girls. I'm a man. . . . I am straight. I like . . . the other gender. No pictures were covered. I was lied to since the beginning. I had a heads up. And you can see in my messages, if you pay attention to the dates and the times, it only lasted ten to thirteen days. The contact stopped . . . . I was just being nice to the person . . . . I'm nice to everyone. I'm nice to males and females. When it comes to me attempting to have sex with a minor, that's the thing that I cannot say I did purposely. I am not an aggressor. I am not a predator. I'm not a sex offender. I was

just being nice, and I . . . spoke to the wrong person on the internet. . . . If I'm gone consecutive years, I'm just going to lose my sanity in there with a bunch of people that are criminals, that actually do stuff, that actually offend, that actually rape, that actually go in and go out and don't care. I care. I care too much. I think my problem is, I'm too nice. I believe too much. . . . I'm a bit more gullible. . . . I walked into this, and—if I would have known I was going to do this, I would have just taken a plea deal and avoided all of this situation. But I'm willing to take responsibility for my—my side. For everything I've did. For everything that I could have been more cautious with, more careful.

After hearing victim impact statements from C.R.'s mother and sister, the court responded to Huerta:

This for me has been a week of making observation of older people taking advantage of the young, the innocent, and individuals who don't have a voice. I quote, "The Defendant stated he thought [C.R.] was fifteen." Fifteen, Mr. Huerta, is still a child. So even if you think you're being cat-fished, you still knew she was a minor. You still knew she was under the age of sixteen. And to encounter that young woman on the streets of this community, and then turn around and take her someplace the way that you did . . . . I saw those pictures. They were disgusting. They were highly offensive, and it should be to a male, a female, a mother, or a father. Highly disgusting. That's not flirting. There is a reason that this Court protects children. They're vulnerable. You're not. You can be very eloquent. You're not lacking in intelligence. But you made some decisions based on sexual desire that overcame your intelligence. And the law does not tolerate that. You don't get to pretend to flirt with a thirteen-year-old the way that you pretended here in your statements that you were flirting. And aside from that fact, you can't tell me that encountering a person in less than a twenty-four-hour period, you become all of that attached to her that you're very concerned about her, and within a ten-day period, you come in to talk to the police, because you're concerned about her. You didn't know her. I mean, yes, as a human being, we are concerned about other individuals and not wanting to see that they get hurt, but this level of the concern that you had should have started right at the beginning, and it should have never allowed you to continue to encounter her in any form or fashion, given your age and hers. . . .

. . . .

. . . You met this child in person. You said you thought she was fifteen. So you can go ahead and think whatever you'd like to assuage yourself of the responsibility of what you did here, but I heard those facts. And I am very concerned about the community

because of the fact that you don't get it. You don't get it. And I believe that I remember there being some indication that someone told you her age, and you still continued to have communication with her. You didn't stop. . . . [T]here is no way on the face of this earth I would give you a deferred judgment. You don't get to injure a thirteen-year-old this way and ask for complete clemency. So the two convictions will go in, one for ten years, one for five. They are not suspended. You will serve those terms. You will serve them consecutively due to the nature of the offenses, the fact that you at least knew she was fifteen years old when she was thirteen. I believe that you have some real issues that need to be resolved, and I agree with the State that you have not been on any trajectory toward rehabilitation, so it will be a fifteen-year term.

The district court did not base Huerta's sentences solely on the nature of his offenses. Although the court expressed outrage at Huerta's actions, it is apparent from the transcript that the court was responding to the statements Huerta made during the hearing. The court imposed consecutive sentences based on the lack of remorse and accountability Huerta showed at sentencing, concerns about his likelihood to reoffend, as well as the nature of his offenses. It imposed a sentence that weighed the likelihood of Huerta's rehabilitation against the need to protect the community from further offenses. Because the court exercised its discretion in sentencing Huerta, we affirm his sentences.

**AFFIRMED.**